Frank E. Thomas, J.
The owner of said real estate and improvements thereon above referred to, is a corporation known as Broome Pix, Inc. This corporation was incorporated in, the Summer of 1961 and one S. C. Sunness became president thereof. Mr. Sunness entered into an agreement dated April 6, 1961 purporting to be between Broome Pix, Inc., and Theater Confections, Inc. Mr. Sunness stated that at the time he executed this agreement, he advised the representative of Theater Confections, Inc., that the agreement would have to be approved by the board of said corporation upon its completion and that he was executing the agreement with that understanding. The evidence indicated that this agreement on the completion of the corporation was not approved and was rejected, and the representatives of said corporation were so advised. This agreement was recorded in the Clerk’s office of the County of Broome on the 28th day of June, 1961 at 11:15 a.m., in Liber 1037 of Deeds at page 724. Theater Confections, Inc., threatened suit to enforce rights under agreement, but never brought action to determine its validity.
On the 27th day of July, Broome Pix, Inc., through its president and certain other members of its board, entered into a second agreement to grant the sole, exclusive right to operate the concession at the said Airport Drive-In Theater above referred to, to Tri-State Refreshments, Inc.
The Airport Drive-In Theater was erected in the Summer of 1961 and the concession was built in accordance with the plans and specifications of Tri-State Refreshments, Inc., and Tri-State Refreshments, Inc., entered into possession on or about September 3,1961 and continued to operate said concession without their possession thereto being disturbed until September 1,1963.
On August 20, 1963 a lease agreement was made between Broome Pix, Inc., and one Herbert Nitke, respondent. This agreement leased the Airport Drive-In Theater to the said Herbert Nitke, and paragraph 23 of said lease, did among other things state: “ The lessee covenants and agrees and it is hereby assuming all of the obligations, conditions and covenants of the lessor arising from the agreement entered into between the lessor and Tri-State Refreshments, Inc. dated July 21st, 1961 ”. The consideration in said lease calls for a down payment of $22,500, of which it is stated that upon the execution thereof $5,000 had already been paid.
*388 Respondent Nitke did on the 15th day of August, 1963 enter into an agreement with Theater Confections, Inc., whereby the said respondent Nitke granted to Theater Confections, Inc., the sole and exclusive right to vend and sell refreshments consisting of candy, confections, etc. The concessionaire by this agreement agreed to advance a loan to the said Nitke in the amount of $22,500, of which $15,000 was to be paid on or before taking possession.
Paramount title is not the determining factor in the matter before the court, as without regard to the question of title, the remedy under said section prevails if it comes within the statute. (Rzepecka v. Urbanowski, 114 Misc. 30; Town of Oyster Bay v. Jacob, 109 App. Div. 613.)
The question to be resolved in whether the petitioner was peaceably in actual possession of said real property on September 1, 1963 and if or not the respondents, or either of them, committed an act or acts of forcible entry or detainer. The background of title is stated for clarity only.
The evidence discloses that respondent Nitke did have a discussion with the representatives of Tri-State Refreshments, Inc., that he was negotiating the leasing of the Airport Drive-In Theater and that Tri-State Refreshments, Inc., would never operate the concession under his management, except that he might consider it if Tri-State Refreshments, Inc., would loan him the money that he had put up in order to lease the theatre property. The respondent Nitke stated: “Money was one of the reasons ”, and that is borne out by the fact that in the lease entered into between respondent Nitke and respondent Theater Confections, Inc., prior to the signing of the lease agreement between respondent Nitke and the owner, Broome Pix, Inc., a loan was agreed upon that allowed the respondent Nitke to enter into the lease with Broome Pix, Inc. Clearly, the respondent Nitke must take possession of the concession and place Theater Confections, Inc., into possession thereof in order to comply with his agreement with them dated August 15, 1963.
Under the lease agreement with Broome Pix, Inc., dated August 20, 1963, the respondent Nitke took possession of the theatre property September 1, 1963, and early that morning called in a locksmith and had him open the doors to the concession and change all the locks. He, Nitke, had advised Theater Confections, Inc., to be there that morning to move in their equipment and set up their operation. The representatives did arrive and disconnected the equipment of Tri-State Refreshments, Inc., and pushed it aside and then did set up and connect their own equipment.
*389 The respondent Nitke, expecting trouble, employed two Deputy Sheriffs (it being their day off) to be on hand to see to it that there was no violence or disturbance. These Deputy Sheriffs were in full uniform, wearing holsters and guns.
When the representatives of Tri-State Refreshments, Inc., arrived in the late afternoon about 6 o’clock, they were met by the deputies, who called the respondent Nitke, before allowing them to be admitted to the concession. Upon being admitted by respondent Nitke to the concession, they found the representatives of Theater Confections, Inc., in possession of the concession with their own equipment set up and operating the concession.
The representatives of Tri-State Refreshments, Inc., were told by the Deputy Sheriffs that if anybody got rough, they would have to put an end to it and that they would not permit violence to take place and would use such force as necessary to prevent it. Deputy De Rosa, when asked what he would have done if the representatives of Tri-State Refreshments, Inc., attempted to take over, said: “ I would try to stop the group that was trying to take over and also try to stop the group that was using force ”.
Representatives of Tri-State Refreshments, Inc., called the State Troopers and in response thereto, Trooper Kelly drove to the grounds. He testified that the parties conferred with him in his car. He stated that after learning that two parties claimed to have leases of the concession, he told the representatives of Tri-State Refreshments, Inc., that there was nothing criminal, but it was a civil matter. Trooper Kelly then stated that the representatives of Tri-State Refreshments, Inc., asked him what would happen if they, the employees of Tri-State Refreshments, Inc., attempted to take over, and he stated that he told them they would be arrested if they used force, or could be arrested if they used force to take over and an assault took place, and it would be disorderly conduct.
The representatives and employees of Tri-State Refreshments, Inc., were faced with the fact that the representative and employees of Theater Confections, Inc., were in possession and operating their equipment, and the only way that they could regain possession was by use of physical force. They were warned by the Deputy Sheriffs in uniform, wearing guns and holsters, that they would not permit it and were further advised by a State Trooper whom they had called, that they could be subject to arrest if they attempted to take over.
Subdivision 10 of section 713 of the Real Property Actions and Proceedings Law was in effect on September 1, 1963. The *390 former section 1412 of the Civil Practice Act stated: ‘ ‘ not with strong hand, nor with multitude of people ”, and a strict construction led to holding that terrorizing conditions must exist in order to be successful, but the more recent cases have held that where a petitioner is kept out through fear of personal violence, he is entitled to relief. The present statute states if a person “ has entered the property or remains in possession by force ”, and in the strict construction of the statute, the court would be required to determine that the force used was a real and compelling force and that it would create a fear of personal violence.
Forcible entry and detainer are two separate acts, but are determined in the same proceeding.
The entry occurred at a time when the representatives of Tri-State Refreshments, Inc., were not on the premises, and the concession was entered by a locksmith, and the representatives of Theater Confections, Inc., were called in by Nitke and replaced the equipment of TrPState Refreshments, Inc., with their own. Assuming, but not deciding, that these acts in themselves did not fall within the meaning of forcible entry under the statute, we then pass to the question of forcible detainer. It is clear that if either one or the other did exist, then the petitioner is entitled to succeed.
It has been stated that the statutes are the re-enactment of a long series of laws for the primary purpose of preventing landlords from taking the law into their own hands and ejecting tenants by violence.
The respondents entered the premises September 1, 1963 and were in possession when the representatives of the petitioner Tri-State Refreshments, Inc., returned to operate the concession at about 6 o’clock that evening, and by their refusal to turn over possession thereof to Tri-State Refreshments, Inc., and its representatives, they did detain the same. If there was a forcible detainer, it took place at that moment.
Was the petitioner kept out of possession through the fear of personal violence? To a law-abiding citizen, is not the fear of arrest and being locked up, a compelling force? What hope had the representatives of the petitioner to enforce their rights against the law officers who faced them? They had been told by these officers that they would use such force as necessary to prevent their trying to take over the concession. Certainly if the statute has for its purpose the preventing of landlords from taking the law into their own hands, then no interpretation should encourage a tenant to take the law into his hands when *391 faced by law-enforcement officers, and particularly, when having been advised that if they did so, they would be subject to arrest. It is difficult to imagine that this did not inspire fear and lead them to believe that to do otherwise than obey, would provoke danger of personal injury. Clearly, this was forcible detainer within the meaning of the statute. (Fults v. Munro, 202 N. Y. 34; Schick v. Wolf, 207 App. Div. 652.)
Petitioner is entitled to a judgment awarding it possession, together, with costs, and if necessary, warrant to remove respondents from said premises.