(109 App. Div. 613)

TOWN OF OYSTER BAY v. JACOB et al.

(Supreme Court, Appellate Division, Second Department. December 8, 1905.)

1. FORCIBLE ENTRY AND DETAINER—DEFENSES—SUPERIOR TITLE.

A better title, or a superior right of possession, is no defense in forcible entry and detainer.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Forcible Entry and Detainer, § 61.]

2. SAME—ACTUAL POSSESSION—EVIDENCE—SUFFICIENCY.

In forcible entry and detainer, evidence considered, and held sufficient, to warrant a finding of actual possession on the part of petitioner.

3. SAME—EXTENT OF POSSESSION—POSSESSION OF PART.

Actual possession of a part, under bona fide claim and color of title

to the whole, is possession of the whole, or so much as is not in adverse possession of others.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Forcible Entry and Detainer, § 47.]

4. SAME—PEACEABLE POSSESSION—EVIDENCE—SUFFICIENCY.
In forcible entry and detainer, evidence *held* sufficient to warrant a finding that petitioner was in peaceable possession.

5. SAME—PETITIONER'S POSSESSION—METHOD OF OBTAINING.
In forcible entry and detainer proceedings, the manner in which petitioner secured possession in the beginning was not available to defendant.

6. SAME—EVIDENCE—SUFFICIENCY.
In forcible entry and detainer, evidence considered, and *held* sufficient to show a forcible entry and detainer.

7. SAME—DEFENSES—LOSS OF PART OF POSSESSION.
In forcible entry and detainer, it is no defense that the offender has yielded up or lost possession of a part of the premises.

8. SAME—STATUTES—CONSTRUCTIVE POSSESSION—WHAT CONSTITUTES.
"Constructive possession," within Code Civ. Proc. § 2245, providing that petitioner in forcible entry and detainer must prove actual possession at the time of the entry, or be in constructive possession at the time of a forcible holding out, includes a case where petitioner has the absolute fee or absolute right of possession by some grant, so that he would be entitled to the actual possession, but for the forcible holding out.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Forcible Entry and Detainer, § 115.]

9. SAME—PETITION—DESCRIPTION OF PREMISES.
In forcible entry and detainer, any description of the premises in the petition by which they can be readily identified and located is sufficient.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Forcible Entry and Detainer, § 115.]

10. SAME—CONSTRUCTIVE POSSESSION—EXCUSE FOR FORCIBLE ENTRY.
The constructive possession of the true owner of land does not excuse his forcible entry.

11. TRIAL—REFUSAL OF INSTRUCTION—ERROR CURED.
Any error in refusing an instruction is cured by the statement in the main charge, of the principle involved.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, §§ 651–659, 706.]

Appeal from Nassau County Court.

Forcible entry and detainer proceedings by the town of Oyster Bay against William H. Jacob and others. From a final order in favor of petitioner, defendant William H. Jacob appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and RICH, JJ.

Chas. De Hart Brower, for appellant.

Henry A. Monfort (Halstead Scudder, on the brief), for respondent.

JENKS, J. The defendant appeals from a final order of forcible entry and detainer entered upon a verdict of a jury in summary proceedings authorized by title 2 of chapter 17 of the Code of Civil Procedure, and instituted in the County Court of Nassau. The petitioner alleged (1) that it was in constructive possession of the premises as owner in fee simple; (2) that on March 30, 1904, it was in actual and

peaceable possession thereof. "The statute was not intended to confer rights. The main object still is to preserve the public peace and prevent parties from asserting their rights by force or violence, though by gradual additions the remedy has become in effect a private as well as a public one." Wood v. Phillips, 43 N. Y. 152, 157. If the petitioner could establish that it was peaceably in actual possession of the premises, and then the defendant made a forcible entry and detainer, it could secure this remedy, which restores the possession which had been wrested from it by force. Though the defendant could show a better title or a superior right of possession, it would not avail him in this proceeding; for he could not first take the law into his own hands to gain possession, and then invoke the law to keep it. Iron Mountain & Helena R. R. Co. v. Johnson, 119 U. S. 608, 611, 7 Sup. Ct. 339, 30 L. Ed. 504; Cain v. Flood (Com. Pl.) 14 N. Y. Supp. 776, affirmed on opinion below 138 N. Y. 639, 34 N. E. 512; Kelly v. Sheehy, 60 How. Prac. 439.

First. Did the evidence warrant a finding that the petitioner was peaceably in actual possession on March 30, 1904? Actual possession means "a subjection to the will and dominion of the claimant." It "exists when a thing is in one's immediate occupancy," and it is evidenced by circumstances which vary according to the locality and character of the property. Anderson's Law Dictionary. "Generally any overt acts indicating dominion and a purpose to occupy and not to abandon the premises will satisfy the requirements as to possession." 13 Am. & Eng. Ency. of Law, p. 748. It is possession "required by the character and situation of the lands." Allaire v. Ketcham, 55 N. J. Eq. 168, 35 Atl. 900. It intends that the land is "in the immediate control or power of the party." Omaha & Florence L. & T. Co. v. Parker (Neb.) 51 N. W. 139, 29 Am. St. Rep. 506. The land in question is a neck of sand, 300 feet wide and 1,200 feet long, in the township of Oyster Bay, known as "East Beach," which joins a peninsula called "East Island" with the north mainland of Long Island. The father of the defendant is the owner of East Island, and he contends that he owns East Beach also. The petitioner sent four custodians to East Beach in April, 1903, who went there about 2 a. m. About 4 p. m. the defendant landed a party of 20 men on the beach and cast the custodians from it. They returned 2 or 3 days thereafter, and there they remained for almost 11 months. They lived in a tent, and then in a house which they set up, and, as one of them testifies, "without interruption, peaceably and quietly." The defendant admitted that he knew these men were there as keepers in possssion for nearly a year. This sandy beach was unimproved and uninhabitated. Neither its location, nor its physical condition, nor its adaptability to any present use, would have moved any occupant to improve it or to disturb much its natural condition. Presumably it had no agricultural value, no immediate rental value if improved, and it afforded no other usufruct, although the sand itself could be sold. There is no period prescribed by the statute as prerequisite to an actual occupation. Cain v. Flood, supra. Even though the defendant first obtained a scrambling possession, he had immediately abandoned it, and, knowing full well the character of the occupancy, had suffered the petitioner to remain on the land unmo-

lested by force or by law for almost a year. I think that the jury was warranted in finding an actual possession on March 30, 1904. Authorities supra, and Edwards v. Cary, 60 Mo. 572. I lay stress upon the fact that the custodians put up a house on the land and abode therein. This at least was full actual occupation of a part of the premises. Their principal based its right of ownership upon the Andros patent, which he contended embraced all of the premises. Actual possession of a part under bona fide claim and color of title to the whole is possession of the whole, or so much as is not in adverse possession of others. Olinger v. Shepherd, 12 Grat. (Va.) 463; VanHorne v. Tilley, 1 T. B. Mon. 51. The patent was important to define the extent or boundaries of the claim and possession. Clements v. Hays, 76 Ala. 280, 284.

Was there evidence to warrant the finding that the petitioner was peaceably in possession? One of the custodians testifies that after his entry, a few days subsequent to April 30, 1904, or, more clearly, after his return, he and his associates lived there for almost a year without interruption, peaceably and quietly. In Stanley v. Schwalby, 147 U. S. 508, 514, 13 Sup. Ct. 418, 37 L. Ed. 259, the court seems to define, or at least to approve of the definition of, peaceable possession as one that was "continuous and one that was not interrupted by adverse suit." In Allaire v. Ketcham, supra, it is said that the test is:

"Whether the defendant, setting up a claim of title, has interfered with complainant's possession by an act which is suable at law, and suit upon which will or may involve the title of the defendant."

There is no proof that for the 11 months intervening the return of the custodians and March 30, 1904, the defendant made any sign or up to that day had entered any adverse suit to recover the premises, though he knew full well that the petitioner was asserting possession through its custodians. Though he may have understood "that a right of property merely, not joined with the possession, would not justify" him in "committing an assault upon the person in possession, in order to regain possession," although the possession was "wrongfully withheld" (Bliss v. Johnson, 73 N. Y. 529, 533), yet he surely knew that the courts were open to him. So far as the right to the remedy was concerned, all that the plaintiff was obliged to show was peaceable and actual possession at the time of the defendant's forcible entry, and the manner in which it secured possession in the beginning is not available to the defendant as a justification of his own unlawful act. Cain v. Flood, supra.

Second. Was the evidence sufficient to establish a forcible entry and detainer? Though entry and detainer may be distinct acts (section 2233, Code Civ. Proc.; People v. Fields, 1 Lans. 222)—indeed, one was an offense at common law, and the other was punishable by statute only (Cunningham on Forcible Entry and Detainer)—the acts are generally considered and treated in substance and principle as one offense (Cunningham, p. 65). "The common practice is to combine the two words and to treat of forcible entry and detainer as a single term." McAdam on Landlord & Tenant, vol. 3, p. 21. The proceeding is to undo an act of physical force. Compton v. The Chelsea, 139 N. Y. 538, 541, 34 N. E. 1090. The force aimed at is more than

that "which in the judgment of the law accompanies every trespass upon the land of another." Commonwealth v. Dudley, 10 Mass. 403, 408. At least, there must flow from the physical force a reasonable apprehension by the owner of personal violence if he attempt then to claim or to maintain his rights against the actor. Commonwealth v. Dudley, supra.

In Willard v. Warren, 17 Wend. 257, 262, Cowen, J., says:

"The result seems to be that there must be something of personal violence, or a tendency to or threat of personal violence, unless the entry or detainer be riotous."

In Milner v. McLean, 2 C. & P. 17, 18, Abbott, C. J., says:

"For if persons either take or keep possession of either house or land, with such number of persons and show of force as is calculated to deter the rightful owner from sending them away and resuming his own possession, that is sufficient in point of law to constitute a forcible entry, or a forcible detainer."

See, too, Ely v. Yore, 71 Cal. 130, 133, 11 Pac. 868; State v. Pollok, 42 Am. Dec. 140.

It is not necessary that the occupant should resist until he compel the doing of an overt act in breach of the peace. On the day in question the plaintiff's custodians, save one, were temporarily absent. The defendant landed on the beach from a boat with eight or ten hired men. He began to build a fence on one side of a highway which runs on the beach. He set up a separate fence all about the hut of the custodian, which was then actually occupied by the latter, four feet therefrom and four feet high, and thus confined him to this house and the small area of land around it. The defendant's followers told the custodian that they proposed to keep him company for some months or some weeks. Indeed, the defendant on the trial testified that he went with his retainers to establish a camp for the purpose of maintaining the possession "which he had." There was a gate in the fence which encompassed the hut. The custodian came out of the gate to the fence of the house, and beyond the fence along the highway, to accost a man thereon. When he sought to return, the defendant, then backed by his retainers, told him he could not come back, that he might have his belongings, but that he "could not return to the beach," and the defendant did not allow him to return to the house or to the beach, but handed out his effects over the fence to him. There were no spoken threats of personal violence, but there may be a menace without words. Was not such an entry by the show of a strong hand, and by the constructive force of combined numbers? If there were ten men, there are authorities which stamp them as a multitude. Anderson's Law Dictionary. Was not such an entry calculated to cow the occupant, and to deter him by fear of personal violence from asserting or maintaining his rights? Would he, unless in fear of violence, when asserting his own dominion, have permitted such an entrance for the avowed purpose of such a stay and accompanied by such instant acts? To adopt the test of Abbott, C. J., supra:

"Would he not, if unawed or inapprehensive, have sent them away and resumed his own possession?"

Third. The same circumstances may be considered on the question of forcible detainer. People v. Rickert, 8 Cow. 226, 231. After the occupation by the defendant and his retainers, the custodian went out beyond the main fence for a moment on an errand, without there being an indication of his intent to abandon possession. When he sought to return, the defendant, backed by his retainers, forbade him, and told him he could not return to the beach, and passed out his personal effects to him. There is proof that the defendant's retainers have remained in encampment on the beach ever since. It is true that after March 30, 1904, the custodians landed on the beach and either forced their way into their house or were suffered to enter it; but at the same time the defendant retained his men on another part of the premises, and now maintains them in a tent or in a house thereon. I do not think that he can show any forcible detainer (which was articulated with the forcible entry of March 30, 1904) simply because the occupant thereafter regained or was suffered to regain a lodgment on a small part of the premises. It is no sufficient answer that the offender has yielded up or lost possession of a part of the premises.

Fourth. It is urged that the petitioner failed to establish by his evidence any constructive possession of the premises. Even if this were the fact, it may be answered that the petitioner alleged and proved that it was peaceably in actual possession and proved a forcible entry. The expression of the statute, constructive possession, has been defined to apply to a case where the petitioner had the absolute fee or the absolute right of possession by some other grant, and who would therefore be entitled to the actual possession, but for the forcible holding out. Lowman v. Sprague, 73 Hun, 408, 26 N. Y. Supp. 568. The petitioner also alleged constructive possession and sought to prove it by reading in evidence the Andros patent, etc. The appellant insists that the proof was not sufficient; but I do not deem it necessary to examine the point, inasmuch as the petitioner did not declare upon a forcible holding out, but upon a forcible entry and detainer as a continuous act, and gave in proof sufficient evidence of a peaceful and actual possession. If he had relied upon the forcible detainer only, then the question of proof of constructive possession would have been pertinent. It is contended that the description of the premises was not sufficient. It was as follows:

"All that certain piece or parcel of land situate, lying, and being in the town of Oyster Bay, county of Nassau, more particularly bounded and described as follows: Beginning at a point where the easterly line of the highway known as the 'Lattingtown-East Beach Road' intersects the main high-water line of Long Island Sound, on the north shore of Long Island; thence westerly along said high-water line to the lands now or formerly owned by Leonard Jacob, commonly known as 'East Island'; thence southerly, along the easterly line of said Jacob's land, to the salt pond, commonly known as 'Dosoris Pond'; thence easterly along the north line of said Dosoris pond to certain salt meadows lying easterly thereof, and along said salt meadows to the east line of the aforesaid Lattingtown-East Beach road; thence northerly along the east line of said Lattingtown-East Beach road to the point or place of beginning—containing within said bounds twelve (12) acres, be the same more or less, subject, however, to the easement of the public in, on, and over such portion of the said highway known as the 'Lattingtown-East Beach road' as is included within said bounds, together with the appurtenances and the buildings and improvements thereon erected."

The criticism is directed against the boundary on the west by the lands now or formerly owned by Jacob Leonard.   It appears that the peninsula adjoining the beach is known as "East Island," which is upland, and is more fertile, and is described by a witness as an island projecting into the sound; that as to "the island" the beach does not continue, but the shore continues with a strip of land known as the beach about 300 feet wide, and with meadow land back of it.   There is no dispute. but that Jacob owned and does own East Island.

In McAdam on Landlord and Tenant (2d Ed.) vol. 3, p. 33, it is said:

"The general rule may be said to be that the description of the premises should if possible, be sufficiently certain to enable the officer to deliver possession of the premises claimed without requiring information outside of the papers."

Cunningham on Forcible Entry and Detainer says, at section 120:

"The description of land in a complaint from which the land is susceptible of being easily and definitely located by a surveyor is sufficient.   Any description by which the premises can be readily identified and located is all that is required"—citing authorities.

See, too, Mead v. Daniel, 2 Port. (Ala.) 86; Silvey v. Summer, 61 Mo. 253; McAdam on Landlord & Tenant (3d Ed.) vol. 3, p. 32.

I think that the court did not err in excluding the deeds offered by the defendant.     The question was not as to his title or as to his superior right of possession, but as to his forcible entry and detainer.   Authorities supra.   Even if they had been admitted, they would have established but a constructive possession.   While there can be no wrongful detainer by a "true owner" when he has made a lawful and peaceable entry (Bliss v. Johnson, supra), yet his constructive possession does not excuse his forcible entry (Id., at page 533, and authorities supra). If the defendant was entitled to the request, refused under exception, that "if the town was in peaceable possession on the morning of March 30, 1904, that nevertheless Mr. Jacob was entitled to regain his possession peaceably if he could," without the modification made by the court, the error was cured by the subsequent and final charge that "one claiming to be entitled to the possession of real property has a right to take possession under such a claim without having had any prior possession, if he can take it peaceably," which was accepted by both parties.

I advise that the order be affirmed, with costs.   All concur.