OPINION OF THE COURT
Memorandum.
Order unanimously reversed with $10 costs, petition reinstated, and matter remanded for further proceedings.
In this proceeding to be restored to possession, the record reveals that for 18 years petitioner operated a garage in a building owned by respondent Park Briar Owners, Inc. Its last lease, which was for 10 years, expired on January 31, 1997. Claiming that it was promised a right of first refusal by landlord’s former president, petitioner made it known to landlord that it did not intend to vacate at the end of its term. On January 23, 1997, petitioner and landlord’s proposed new tenant, respondent Park Briar Garage Corp., signed a letter of surrender in which petitioner agreed to vacate at 9:00 a.m. on January 31, 1997 in return for annual payments of $6,000 during the term of the new tenant’s tenancy. Petitioner’s president claims that he thereafter changed his mind, that he informed the new tenant that he did not wish to surrender and that, as a result, no surrender occurred at 9:00 a.m. on January 31, 1997. Instead, according to the affidavits submitted by petitioner, at midnight of that day four or five men representing landlord’s Board of Directors arrived at the premises with three uniformed security personnel. Petitioner’s employees were told that they had to leave or else they would be sent to jail. When one of the employees attempted to call petitioner’s president, the phone was slammed down by one of the security men. The employees left as a result of the threats by landlord’s representatives and the new tenant entered into possession effective February 1, 1997.
On behalf of landlord, its president claimed in opposing papers that landlord’s representatives did not threaten petitioner’s employees; that landlord hired the security guards because petitioner’s president had threatened violence and property damage; that petitioner’s employees left voluntarily upon being shown the letter of surrender; that the lease gave landlord a right to reenter upon a default in rent; and that petitioner had defaulted in January rent and additional rent.
Without holding a hearing, the court below issued an order denying petitioner’s “motion”. The court reasoned that when *557 petitioner failed to vacate at the end of the lease landlord had a common-law right to reenter peaceably and to evict petitioner (citing, inter alia, Cohen v Carpenter, 128 App Div 862; Liberty Indus. Park Corp. v Protective Packaging Corp., 71 Misc 2d 116, affd 43 AD2d 1020). The court further ruled that landlord’s affidavits established that there was a default in rent so that landlord also had a right to reenter under the reentry provision of the lease. Finally, the court found that the reentry was peaceable because petitioner’s employees did not claim that they were threatened with physical violence.
On this appeal, landlord and the new tenant in possession contend that even if the reentry was unlawful petitioner is not entitled to be restored to possession. In support of this contention, they cite several relatively recent cases which hold that a forcibly evicted person who has no right to possession should not be restored (Wagman v Smith, 161 AD2d 704; Friends of Yelverton v 163rd St. Improvement Council, 135 Misc 2d 275; Yates v Kaplan, 75 Misc 2d 259). In the seminal Yates case, the court, acknowledging its failure to find controlling authority, reasoned that to restore to possession a party who had no right to possession would be futile and would merely engender further litigation that would inevitably end in the party’s eviction.
We respectfully decline to adopt the reasoning of these cases. Prior to their determination, the law was well settled both in New York and elsewhere that the question of which party has a superior right to possession is immaterial in a statutory proceeding for forcible entry and detainer (see, e.g., Iron Mtn. & Helena R. R. Co. v Johnson, 119 US 608; Cain v Flood, 14 NYS 776, affd on opn below 138 NY 639; Town of Oyster Bay v Jacob, 109 App Div 613; Rzepecka v Urbanowski, 114 Misc 30). In the Iron Mtn. case, the Supreme Court explained the reason for this rule as follows: “The general purpose of these statutes is, that, not regarding the actual condition of the title to the property, where any person is in the peaceable and quiet possession of it, he shall not be turned out by the strong hand, by force, by violence, or by terror. The party so using force and acquiring possession may have the superior title, or may have the better right to the present possession, but the policy of the law in this class of cases is to prevent disturbances of the public peace, to forbid any person righting himself in a case of that kind by his own hand and by violence, and to require that the party who has in this manner obtained possession shall restore it to the party from whom it has been so obtained; and then, when the parties are in statu quo, or in the same position as *558 they were before the use of violence, the party out of possession must resort to legal means to obtain his possession, as he should have done in the first instance. This is the philosophy which lies at the foundation of all these actions of forcible entry and detainer, which are declared not to have relation to the condition of the title, or to the absolute right of possession, but to compelling the party out of possession, who desires to recover it of a person in the peaceable possession, to respect and resort to the law alone to obtain what he claims” (119 US 608, 611).
Similarly, in the Town of Oyster Bay case (supra) the Appellate Division stated: “If the petitioner could establish that it was peaceably in actual possession of the premises, and then the defendant made a forcible entry and detainer, it could secure this remedy which restores the possession that had been wrested from it by force. Though the defendant could show a better title or a superior right of possession, it would not avail him in this proceeding, for he could not first take the law into his own hands to gain possession, and then invoke the law to keep it. (Iron Mountain & Helena Railroad v. Johnson, 119 U. S. 608, 611; Cain v. Flood, 14 N. Y. Supp. 776; affd. on opinion below, 138 N. Y. 639; Kelly v. Sheehy, 60 How. Pr. 439.)” (109 App Div 613, 614-615.)
We are unaware of any change in the legislative purpose as described in these rulings. Moreover, inasmuch as the more recent cases do not distinguish these older cases, we are bound to follow the latter, which include a determination by the highest court of the State (see, 21 CJS, Courts, § 152 [a], at 188). Accordingly, we reject the contention that petitioner’s proceeding fails because petitioner had no right to continued possession.
This case is not comparable to cases in which the forcibly evicted party is a mere licensee or squatter and is not considered to be in legal possession (see, e.g., P & A Bros. v City of N. Y. Dept. of Parks & Recreation, 184 AD2d 267). In those cases, a proceeding pursuant to RPAPL 713 (10) will not lie because legal possession was at all relevant times in the owner or licensor (see, Napier v Spielmann, 196 NY 575, affg on opn at 127 App Div 567). Here, petitioner was in legal possession at the time of the reentry.
With regard to landlord’s contention that the reentry was peaceable, we hold that the Civil Court erred in determining this issue without holding a hearing. If, as petitioner’s employees averred, they left the premises in fear for their safety and *559 only as a result of landlord’s threats to have them put in jail, a finding that the reentry was not peaceable would be justified (see, Lori-Kay Golf v Lassner, 93 AD2d 857, revd in part 61 NY2d 722; see also, Carter v Adriani, 84 AD2d 513, 514 [Kupferman, J., dissenting opn]; but cf., Matter of Jovana Spaghetti House v Heritage Co., 189 AD2d 1041). Accordingly, the matter is remanded for a trial on the issue of whether the reentry was unlawful.
Kassoff, P. J., Chetta and Patterson, JJ., concur.