Barnes v Service (2025 NY Slip Op 50762(U))

[*1]

Barnes v Service

2025 NY Slip Op 50762(U)

Decided on May 14, 2025

Civil Court Of The City Of New York, Queens County

Schiff, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 14, 2025
Civil Court of the City of New York, Queens County

Staubyn Barnes, Petitioner,

against
Michelle Service, Respondent.

Index No. L&T 000011-25

Staubyn Barnes, pro se Petitioner
Michelle Services, pro se Respondent

Logan J. Schiff, J.

Petitioner, Staubyn Barnes, commenced this unlawful entry and detainer proceeding, hereinafter referred to as an "illegal lockout," pursuant to RPAPL 713(10) against Respondent, Michelle Service, by order to show cause dated January 2, 2025, seeking restoration to possession of the cellar of 131-54 224 Street, Queens, New York 11413.[FN1]
Following several adjournments in order to ascertain the scope of dueling Family and Criminal Court orders of protection between Petitioner and Respondent's daughter, non-party Monique Johnson, the court conducted a trial on April 11, April 23, and May 7, 2025. Both parties were unrepresented.
THE TRIAL RECORD
Petitioner, Respondent, and Respondent's daughter, Ms. Johnson, testified during a bitterly contested trial, frequently interrupted by crosstalk and vituperations flung by both sides. Despite the acrimony, most of the material facts are undisputed, and the court found all three witnesses to be credible.
The parties are siblings. Their mother, Paulette Snead, acquired the subject one-family, [*2]two-story home in or around 2004.[FN2]
 Ms. Snead had two daughters, including the Respondent, and one son, the Petitioner. At some point over twenty years ago, Petitioner returned from an unspecified period of incarceration and began living in the home with his mother, sisters and various other family members.[FN3]

Ms. Snead passed away on July 19, 2019, as per a certified death certificate offered into evidence. She did not leave a will, and as is unfortunately often the case, this lapse in estate planning precipitated a deep rift between the family member heirs: Petitioner, Respondent, and their subsequently deceased sister, Sharon Service. To this day, the parties are unable to reach any agreement on the use or disposition of the property and have never sought a legal determination of their rights, either in Surrogate's Court, or, in the years that followed Ms. Snead's death, via a partition action in Supreme Court, the appropriate forum for such a dispute between co-owners.
In or around January 2020, Petitioner temporarily relocated to Jamaica for a business trip and was unable to repatriate until September 2020 as the result of the COVID-19 pandemic. When he returned, all the bedroom space in the home had been occupied by other family members. Needing somewhere to live, Petitioner built what was essentially an apartment, including a bathroom and bedroom, in what the parties refer to as basement but, based on the photos presented at trial and a notice of violation issued by the Department of Buildings, appears to be an entirely below ground cellar. The space can be accessed either through a metal hatch from outside the building, or via the side or front door to the house. Both of the latter options require entering the first floor, main living space and descending through an interior staircase. The cellar also houses the boiler and the laundry room.
Petitioner's other sister, Sharon Service, was unhappy with the unpermitted living space Petitioner had created and made her feelings known to him. This grievance ultimately culminated in a physical altercation between Petitioner and Sharon's adult autistic son. As a result, the police were called, and Petitioner was removed from the premises for the first of many times.
Petitioner went to Jamaica in early 2021, only to return some months later that year to resume his residence in the cellar, where he continued to live until he was forced to temporarily relocate because of full stay away orders issued by both Family and Criminal Court in mid-2024 for the benefit of Respondent's daughter Ms. Johnson. The parties agree that Petitioner has been arrested over ten times in connection with alleged violence and threats, primarily directed at Ms. Johnson. However, according to Petitioner's testimony, every proceeding and order has ultimately been dismissed but for one pending Family Court order of protection barring him from residing on the first or second floor of the premises, which remains in place through June 2026.
Petitioner testified that following the dismissal of one of his criminal cases, he was advised by the Family Court judge during an appearance on January 9, 2025, that he could return [*3]to the basement/cellar portion of the premises. However, when he went home Respondent and her daughter immediately called the police and accused him of violating the order of protection, resulting in his arrest.
On February 4, 2025, Petitioner returned to Criminal Court to seek formal modification of the outstanding Family and Criminal Court orders of protection. A transcript admitted into evidence reflects that following a "Crawford" hearing under CR-2239-25/QU, the Judge issued an oral order finding that Petitioner had demonstrated a potential deprivation of property rights, insofar as Petitioner established that he resided in the basement/cellar of the premises prior to issuance of the stay away order, and therefore modified the orders to permit Petitioner to reside in this space so long as he avoided contact with Ms. Johnson, concluding as follows:
"What this means for you, sir, is this: Under my order, you may return to the basement portion of the home. You may not return to the main upstairs portion of the home, but you may return to the portion which you previously resided or rather that would not be a violation of this order of protection." Pet.'s Exhibit 5, Tr. at 19.
Following the Crawford hearing, Petitioner attempted to return to the home on February 11, 2025, however, according to Petitioner's undisputed testimony, Respondent and her daughter immediately called the police and accused him of violating the order of protection and attempting to burglarize the home, resulting in his arrest once again. Petitioner testified, credibly in this court's view, that he fears returning to the basement may subject him to another unjustified arrest, notwithstanding the Criminal Court Judge's order allowing him to return to the basement/cellar.
The parties also agree that there is an open Department of Buildings violation for the illegal conversion of the cellar into residential space, directing the parties to discontinue the illegal use and subjecting them to over $10,000 in potential fines and penalties should the violation not be timely corrected. Respondent testified that she desires to clear the violation by restoring the space to an unfinished basement, but is refraining from doing so in light of the temporary restraining order issued by this court, upon commencement of the proceeding, barring the renovation or destruction of the premises pending a final determination. Petitioner testified that, if the basement/cellar cannot be legalized, he at least wants to utilize the space for storage and to be able to come and go as he pleases.
Beyond the foregoing, the bulk of the testimony served primarily to demonstrate the parties' deep antipathy for one another. Respondent refuses to refer to Petitioner as her brother, only acknowledging that he is her mother's son when pressed to define the nature of their relationship. Respondent and her daughter credibly testified that Petitioner has made their lives miserable since the death of the parties' mother; that Petitioner sold drugs, including crack cocaine, out of the basement; that he removed Ms. Johnson's children's toys from the yard to put in a deep fryer; that he used the yard for an unpermitted junk disposal business; that he hosted parties at all hours, during which guns were brandished and sometimes fired; that Petitioner did not pay for the mortgage or upkeep of the home in any way; that Respondent would rather the home is lost in foreclosure than be forced to share it with Petitioner; that since 2024, Respondent has stopped paying the mortgage in anticipation of losing the home; that Petitioner is not on speaking terms with any of his five children, did not even visit his mother on her deathbed, and has repeatedly fought with his autistic nephew and called him "retarded;" that Ms. Johnson fears for her safety in Petitioner's presence, and that he has threatened to cause her physical harm on many occasions, including by threatening to shoot and kill her; that Respondent and her daughter [*4]need the basement in order to do laundry, a task they feel they cannot accomplish safely if Petitioner is down there; and that the parties' sister Sharon Service also detested Petitioner and died in the Queens Civil Court courthouse on March 6, 2024, while attending an appearance on an ongoing civil suit Petitioner brought against Respondent and her sister Sharon claiming personal property damage under CV-2874-22/QU, and in which Respondent has interposed a counterclaim essentially sounding in unjust enrichment based on her paying the mortgage for the home without contributions from Petitioner.
ANALYSIS
A threshold question in any unlawful detainer proceeding is whether the petitioner has the requisite possessory interest to sustain a cause of action. An illegal lockout may only be maintained by a person "peaceably in actual possession at the time of the forcible or unlawful entry or in constructive possession at the time of the forcible or unlawful detainer" (RPAPL 713[10]), a categorization which does not include mere licensees and other guests, whose occupancy is non-exclusive (see John v John, 81 Misc 3d 129 [App Term, 2d Dept, 9th & 10th Jud Dists 2023]; Zhu v Li, 70 Misc 3d 139 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]).[FN4]
This does not mean, however, that only a tenant can bring an illegal lockout, as the statute explicitly authorizes commencement by any party in "constructive possession."[FN5]
Parties in constructive possession include a potential successor to a rent-stabilized tenancy, who has inchoate possessory rights (see Banks v 508 Columbus Props., 8 Misc 3d 13 [App Term, 1st Dept 2005]; Dixon v Fanny Grunberg & Assoc., LLC, 4 Misc 3d 139 [App Term, 1st Dept 2004] ["[T]he existence of a landlord and tenant relationship is not a sine qua non to the maintenance of a forcible entry and detainer summary proceeding under RPAPL 713[10]"]), a former owner following a foreclosure action (see Knowles v 21st Mtge. Corp., 81 Misc 3d 930 [Civ Ct, Queens Co 2023]), a party to a lease approved by Section 8, who has not yet received keys or taken physical possession (Alcindor v Raphael, 2018 NYLJ LEXIS 569 [Civ Ct, New York Co 2018]), and, most relevant here, the owner of a residential housing accommodation, who retains constructive possession even in the absence of actual (i.e. physical) possession (see Leagem Partners LLC v Gallimore, 2021 NY Slip Op 32862 [Civ Ct, Queens Co 2021]; Saccheri v Cathedral Props. Corp., 184 Misc 2d 304 [App Term, 2d Dept, 9th & 10th Jud Dists 2000]; Parkas v Hurley, 61 Misc 228 [App Term, 1st Dept 1908]; Oyster Bay v Jacob, 109 AD 613 [2d Dept 1905]).
The record, at least as undisputed by both sides for the limited purpose of this proceeding, establishes that Petitioner is a co-owner of the one-family home in question. Following the death of the parties' mother intestate, title passed in equal parts to each of her three [*5]children (see Pravato v M.E.F Builders, 217 AD2d 654 [2d Dept 1995]; EPTL §§ 1-2.16 and 4-1.1 [a] [3]). While ideally the parties would have confirmed their ownership rights in Surrogate's Court following their mother's death, there is no legal requirement to do so, as title vests by operation of law in the decedent's heirs even in the absence of a court order (see id.; LCD Holding Corp v Powell-Allen, 203 AD3d 811 [2d Dept 2022] ["When a property owner dies intestate, title to real property automatically vests in his or her distributees as tenants in common"]).
As a co-owner of the subject home since his mother's death, Petitioner's status vis-à-vis his sister is that of a tenant-in-common (see id; Kosc Dev., Inc. v Scott, 28 Misc 3d 138 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2010]). A tenant-in-common's possessory interest endures even in the absence of their physically residing in the premises, as the in-possession owner occupies the property for "for the benefit of all other cotenants [i.e. co-owners]" (Myers v Bartholomew, 91 NY2d 630 [1998] ["In a tenancy-in-common each cotenant has an equal right to possess and enjoy all or any portion of the property as if the sole owner. Consequently, nonpossessory cotenants do not relinquish any of their rights as tenants-in-common when another cotenant assumes exclusive possession of the property."]).[FN6]
Accordingly, Petitioner has established that he was in, at a minimum, constructive possession for purposes an illegal lockout proceeding at the time of the alleged unlawful detainer.[FN7]

Nor is there any bar to commencement of an illegal lockout by one co-owner as against another. Outside of the equitable remedy of partition, tenants-in-common generally have no right to exclude their counterparts, whether by an eviction proceeding (see Kosc Dev., Inc. v Scott, 28 Misc 3d 138 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2010), or via extra-legal measures, which can give rise to both civil and criminal liability for the wrongdoer (see RPAPL §§ 711, 768, 853; NYC Admin Code § 26-521) and are appropriately vindicated by an unlawful detainer petition. While normally the result of a successful illegal lockout proceeding is an award of exclusive possession from a trespasser or other interloper, RPAPL 713(10) does not prohibit restoration to shared possession with a person of equal possessory rights (see Markun v Weckstein, 100 Misc 668 [App Term, 1st Dept 1917] [holding under the predecessor statute to RPAPL 713(10) in such instances "the warrant of removal may be executed simply by removing the offending tenant from exclusive rather than entire possession of the premises "]; Billips v Billips, 189 Misc 2d 144 [Civ Ct, NY Co 2001] [Acosta, J.] ["The remedy of restoration [*6]to the premises is available even where the ousted occupant was locked out by a tenant in common or by a colessee"]); see also Cudar v O'Shea, 37 Misc 3d 35 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]). Indeed, to conclude otherwise would effectively relegate an unlawfully disseized co-owner or other co-tenant, often the party of inferior physical or financial strength, to the slower and costlier remedy of partition or ejectment via a plenary action. Inasmuch as an illegal lockout is an emergency summary proceeding intended to "preserve the public peace and prevent parties form asserting their rights by force or violence" (Parkas v Hurley, 61 Misc 228 [App Term, 1st Dept 1908]; see also Medina v Essex, 72 Misc 3d 1225 [Civ Ct, Kings Co 2021]; Carter v Andriadi, 84 AD2d 513 [1st Dept 1981]), any result that would incentivize unlawful and often violent behavior, or deny the victims of such conduct a prompt day in court, should be avoided as contrary to the clear remedial ambit of the statute (see Paikoff v Harris, 185 Misc 2d 372 [App Term, 2d Dept, 2d & 11th Jud Dists 1999] ["[I]n construing a statute a court should consider the mischief sought to be remedied and should construe the act in question so as to suppress the evil and advance the remedy"] [internal citation and quotation omitted]).[FN8]
Accordingly, the court finds that Petitioner may maintain this illegal lockout proceeding against his co-owner sister.
In addition to demonstrating a possessory interest, the petitioner in an RPAPL 713(10) proceeding must establish that the offending party "remains in possession by force or unlawful means" (id.). As it is undisputed that Petitioner's sister, the Respondent, is a tenant-in-common, she is not occupying the premises by unlawful means, as she "has the right to take and occupy the whole of the premises and preserve them from waste or injury, so long as he or she does not interfere with the right of [the other tenant] to also occupy the premises" (Corsa v Biernacki, 2 AD3d 388 [2d Dept 2003] [internal quotation and citation omitted]). Therefore, to prevail, Petitioner must establish that Respondent is keeping him out of possession by force. 
The word "force" has been interpreted by the appellate courts broadly in the context of unlawful detainer proceedings to include verbal and even nonverbal threats of violence (see Oyster Bay v Jacob, I3 [2d Dept 1905]), the removal from possession through physical means, including the padlocking of doors and changing of locks (see Carter v Andriadi, 84 AD2d 513 [1st Dept 1981], citing Wassberg v Orwell Mgmt., NYLJ Dec 17, 1979 [App Term, 1st Dept 1979] and Yates v Kaplan, 75 Misc 2d 259 [Civ Ct, New York Co 1973]), and threats of arrest (see 110-45 Queens Blvd. Garage v Park Briar Owners, 177 Misc 2d 555 [App Term, 2d & 11th Jud Dists 1998]; rev'd other grounds 265 AD2d 415 [2d Dept 1999]). Still, a showing of force requires proof of a significant physical invasion into the occupancy rights of the petitioner and does not include, for instance, the failure to provide a lobby door keycard to a tenant (see Clarke v Copenhagen Leasing, L.P., 48 Misc 3d 27 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015]).
Here, upon due deliberation, having considered the testimony and evidence, the court finds that Petitioner failed to establish that he is being kept out of the cellar by force. At the time Petitioner initiated this proceeding on January 2, 2025, he was barred from returning to the entire [*7]home by virtue of full stay away orders issued by Criminal and Family Court. Only on February 4, 2025, were these orders modified following a Crawford hearing allowing Petitioner to return to the cellar of the home, meaning he was not being held out of the premises by force upon commencement of this proceeding. Furthermore, even accepting the proposition that repeatedly reporting a party in possession to the police for non-existent violations of an order of protection could constitute the use of force for purposes of an illegal lockout, the record merely establishes that, on one occasion on February 11, 2025, Respondent's daughter may have erroneously reported a violation of the stay away order. Nor is there any evidence this action was willful, as Ms. Johnson credibly testified that when she called the police, she did not know the stay away order had recently been adjusted to allow Petitioner to return to the cellar. Given the extensive history between the parties, the myriad arrests and orders of protection, and the credible fear for their comfort and safety that Respondent and her daughter expressed during the trial, the court finds that one errant call to the police does not constitute the use of force for purposes of an illegal lockout proceeding. Accordingly, the Petition is dismissed after trial for failure to demonstrate that Respondent remains in possession by force or other unlawful means (see Kesoglides v Marine Terrace Assoc., 70 Misc 3d [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]).[FN9]

The court emphasizes that it is not concluding that Petitioner has lesser possessory rights than Respondent. To the contrary, Petitioner, as a co-owner, is a tenant-in-common with the right to shared possession of the entire home, restricted only by any extant orders of protection temporarily barring him from the residence.[FN10]
 To the extent that these orders have, at present, been modified to allow Petitioner to return to the cellar, there is nothing preventing him from doing so, at least via the hatch from the outside of the home, which he is free to modify as he chooses to facilitate his unfettered access. If, ultimately, Petitioner can only reliably access the cellar through the main or side door to the house, an act that may involve entering Respondent's and her daughter Ms. Johnson's living space, potentially violating one or more orders of [*8]protection, Petitioner must seek further modification of these orders with Family or Criminal Court. Apart from these restrictions, if Petitioner is intent on continuing the unlawful and likely unsafe use of the cellar for residential purposes, potentially subjecting the home and its co-owners to civil penalties and other liabilities, it is not within this court of limited jurisdiction's power to stop him from exercising his property rights.[FN11]

CONCLUSION
For the foregoing reasons, the Petition is dismissed after trial. All stays are vacated, and Respondent may take any steps necessary to discontinue the unlawful use of the cellar to clear the open Department of Buildings violation, including by removing all residential living space and restoring the cellar to its original pre-conversion condition. The clerk is directed to enter a judgment of dismissal in favor of Respondent.
The court urges the parties to immediately commence a partition action in Supreme Court to resolve how their long-term family will be used and occupied, as out of court resolution appears impossible, and the court fears for the safety of all involved should this matter fester any longer.
This constitutes the decision and order of the court.
Dated: May 14, 2025
Queens, New York
HON. LOGAN J. SCHIFF, J.H.C.

Footnotes

Footnote 1:While the Petition describes the property sought to be recovered as the entire home, Petitioner made clear throughout the trial that he is only seeking possession of the cellar. Accordingly, on the court's own motion, the Petition and all papers are hereby amended to describe the subject premises as the cellar of 131-54 224 Street, Queens, NY 11413 (see Najjar v. Cooper, 35 Misc 3d 129 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]; Ripple's of Clearview, Inc. v Le Havre Assoc., 88 AD2d 120 [2d Dept 1982]).

Footnote 2:Petitioner testified that his mother purchased the property in or around 1994; however the deed to the premises, publicly available on Acris, is dated 2004. It is unclear if the family resided in the property prior to 2004, however this is not ultimately material to the court's determination.

Footnote 3:Petitioner testified that this occurred in 1999, though again, the court is uncertain as to the precise date in light of the above-mentioned deed dated 2004.

Footnote 4:Because the sole purpose of an unlawful detainer proceeding is to recover possession, a party seeking only monetary damages for illegal eviction or other incidental relief related to personal property is relegated to a plenary action (see Tavares v Tavares, 71 Misc 3d 134 [App Term, 1st Dept 2021]; Rostant v Swersky, 79 AD3d 456 [1st Dept 2010]).

Footnote 5:This contrasts with the requirements for a plenary action for damages for unlawful eviction under RPAPL 853, which generally requires a demonstration that the plaintiff was in "actual possession" at the time they were unlawfully disseized (see Weiss v Bretton Woods Condominium II, 203 AD3d 1100 [2d Dept 2022]).

Footnote 6:Where co-owners cannot resolve how a property should be possessed, their remedy is a partition action, which must be brought in Supreme Court for any property with an assessed value over the $50,000 jurisdictional limit of Civil Court. Unlike a summary eviction proceeding, which is a creature of statute, a partition action is entirely equitable in nature. The court may adjust the parties' interests in the property as is just, factoring in their use and contributions to the upkeep of the home, and may order a sale to the extent equitable division is impossible (see Khotylev v Spektor, 165 AD3d 1088 [2d Dept 2018]).

Footnote 7:While not required under the existing case law, even assuming, arguendo, that an illegal lockout can only be maintained by a party in possession for living purposes, the record reflects that Petitioner has been residing continuously in the premises for several years and was only temporarily displaced by virtue of an order of protection, during which time he retained constructive possession in the absence of an unequivocal surrender of his possessory interest.

Footnote 8:It is also noteworthy that RPAPL 713(10) does not require a predicate notice to quit the premises, unlike virtually every other cause of action under RPAPL 713, further bolstering the conclusion that the legislature did not envision that the only purpose of such proceeding is an award of exclusive possession.

Footnote 9:Even had Petitioner proven the elements of an illegal lockout proceeding under RPAPL 713(10), as the portion of the property in question for purposes of this proceeding is a cellar entirely unfit for human habitation and subject to a Department of Buildings violation for unlawful use, the particular facts of this case would not warrant an ultimately futile order compelling restoration for living purposes in violation of law, particularly insofar as Petitioner is entitled to possession of the lawful portions of the home but for an order of protection (see 72-06 Austin Realty Corp. v Cano Ventures Corp., 60 Misc 3d 128 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2018); Soukouna v 365 Canal Corp., 48 AD3d 359 [1st Dept 2008]). Petitioner acknowledged during the trial that to the extent the basement cannot be legalized, he merely wants assurances he can use the basement for storage and other non-residential purposes; however, such a determination is outside this court's jurisdiction, which is limited to matter concerning residential housing (see CCA 110[a][5]).

Footnote 10:To be clear, this court is not making a title determination, which is outside of this court's jurisdiction (see Carr v Carr, 78 Misc 3d 135 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2023]), nor did the parties present birth certificates demonstrating their relationship to the former owner, their mother, though the court has no reason to doubt their testimony and assumes it to be the truth for the purpose of this proceeding.

Footnote 11:While equitable considerations could factor into the remedies employed in a partition action in Supreme Court and the distribution to the parties upon a sale (see Khotylev v Spektor, 165 AD3d 1088 [2d Dept 2018])), contrary to the position espoused by Respondent, the fact that Petitioner may not have contributed his fair share to the maintenance of the property, or that he has not resided in the main area of the home for many years, does not divest Petitioner of his ownership interest, which is created by statute not equity (see EPTL §§ 1-2.16 and 4-1.1 [a] [3]).