OPINION OF THE COURT
 

 Jasen, J.
 

 The narrow issue presented on this appeal is whether the evidence on the record supports a holding that the Metropolitan Transportation Authority and the New York City Transit Authority acted unlawfully in rejecting all bids submitted in an initial round of bidding on a public works project.
 

 The relevant facts are not in dispute.
 
 [1]
 
 Respondents, the Metropolitan Transportation Authority and the New York City Transit Authority (Transit Authority), solicited bids for a public works contract for the massive rehabilitation of part of New York City’s
 
 *147
 
 subway system. Three bids were received, including that of petitioner, a joint venture, whose bid was the lowest and fell within the advertised estimated cost between $120 and $140 million. Shortly after opening the bids, the Transit Authority met with each of the three bidders for the stated purpose of determining why the prices submitted were as high as they were and whether the project costs might be reduced. Although the bidders were met separately, each was informed that the meetings with the others were taking place.
 

 Subsequent to the meetings, the second lowest bidder advised the Transit Authority by letter that significant cost reductions were possible and suggested another meeting to discuss the possibility of preparing revised contract documents. Several days thereafter, it was petitioner that met again with the Transit Authority. Petitioner was informed that its bid, though the lowest, was far in excess of the revised estimated cost and that, therefore, all the bids might be rejected. Nevertheless, petitioner was told that it was deemed technically and financially qualified to undertake the project and, indeed, was afforded the opportunity to reduce its bid for consideration. Within the next two weeks, petitioner once again met with the Transit Authority and offered to reduce its bid price by two million dollars, a proportionately small amount. The reduction was deemed insufficient by the Transit Authority’s Chief Engineer who, on the following day, recommended that all the bids be rejected and that the contract, with modifications, be readvertised for a second round of bidding. The recommendation was adopted by the President of the Transit Authority and the three bidders were notified. Thereafter, the Transit Authority circulated a notice soliciting new bids for the project and indicating an estimated cost range between $100 and $120 million, $20 million lower than that originally advertised.
 

 Petitioner commenced this article 78 proceeding seeking an injunction against a second round of bidding and a judgment directing respondents to award the contract to petitioner as the lowest responsible bidder. Special Term granted the petition concluding that the Transit Authority’s postbid communications with the three bidders, its revision of the advertised cost estimate and its purpose of obtaining bid prices lower than that originally received rendered the decision to reject all first round bids arbitrary and capricious. The Appellate Division agreed with Special Term, two justices dissenting, that the contract should be awarded to petitioner, but modified the judgment to reduce the contract price by two million dollars on the basis of petitioner’s prior offer to the
 
 *148
 
 Transit Authority to so lower its bid. The court held that the record demonstrates an "appearance of impropriety” on the part of the respondents which "might have” a detrimental effect "on the broad interest of the public in the entire public bidding process”. (111 AD2d, at p 234.) The two dissenters argued that the mere "appearance” of impropriety is not sufficient ground to disturb the decision of the Transit Authority absent a showing of actual favoritism, fraud or similar evil which competitive bidding is intended to prevent. We agree and now reverse the order below.
 

 As this court has stated on prior occasion, the purpose of the laws in this State requiring competitive bidding in the letting of public contracts is "to guard against favoritism, improvidence, extravagance, fraud and corruption.”
 
 (Jered, Contr. Corp. v New York City Tr. Auth.,
 
 22 NY2d 187, 193;
 
 see also, Matter of Fischbach & Moore v New York City Tr. Auth.,
 
 79 AD2d 14,
 
 lv denied
 
 53 NY2d 604.) These laws were not enacted to help enrich the corporate bidders but, rather, were intended for the benefit of the taxpayers. They should, therefore, be construed and administered "with sole reference to the public interest”. (10 McQuillin, Municipal Corporations § 29.29, at 302 [3d rev ed];
 
 see also, Matter of Signacon Controls v Mulroy,
 
 32 NY2d 410, 413.) This public interest, we have noted, is sought to be promoted by fostering honest competition in the belief that the best work and supplies might thereby be obtained at the lowest possible prices.
 
 (Jered Contr. Corp. v New York City Tr. Auth., supra,
 
 at pp 192-193;
 
 see also, Le Cesse Bros. Contr. v Town Bd.,
 
 62 AD2d 28, 31 [Simons, J.],
 
 affd
 
 46 NY2d 960;
 
 Matter of Sweet Assoc. v Gallman,
 
 36 AD2d 95, 99,
 
 affd
 
 29 NY2d 902.)
 

 Indeed, this policy is reflected explicitly in the statutory provisions which mandate that public work contracts be awarded "to the lowest responsible bidder”. (Public Authorities Law § 1209 [1]; General Municipal Law § 103 [1];
 
 see also,
 
 General Municipal Law § 100-a.) Dishonesty, favoritism and material or substantial irregularity in the bidding process, which undermines the fairness of the competition, impermissibly contravene this public interest in the prudent and economical use of public moneys.
 
 (See, e.g., Gerzof v Sweeney,
 
 16 NY2d 206;
 
 Le Cesse Bros. Contr. v Town Bd., supra; Matter of M. Cristo, Inc. v Office of Gen. Servs.,
 
 42 AD2d
 
 481; Matter of Margrove, Inc. v Office of Gen. Servs.,
 
 27 AD2d 321,
 
 affd
 
 19 NY2d 901;
 
 cf. People v Stephens,
 
 71 NY 527.)
 

 Nevertheless, where good reason exists, the low bid may be disapproved or, indeed, all the bids rejected. Neither the low bidder
 
 *149
 
 nor any other bidder has a vested property interest in a public works contract (see,
 
 Abco Bus Co. v
 
 Macchiarola, 75 AD2d 831, 833-834 [Hopkins, J., dissenting],
 
 revd
 
 52 NY2d 938,
 
 cert denied
 
 454 US 822;
 
 Depot Constr. Corp. v City of New York,
 
 46 NY2d 859, 861; 10 McQuillin,
 
 supra
 
 § 29.77, at 413) and statutory law specifically authorizes the rejection of all bids and the readvertisement for new ones if deemed to be "for the public interest so to do” (Public Authorities Law § 1209 [1];
 
 see also,
 
 General Municipal Law § 103 [1];
 
 Matter of Carter v Blake,
 
 63 AD2d 760,
 
 lv denied
 
 45 NY2d 705). Although the power to reject any or all bids may not be exercised arbitrarily or for the purpose of thwarting the public benefit intended to be served by the competitive process
 
 (Matter of Fischbach & Moore v New York City Tr. Auth., supra; Matter of Carucci v Dulan,
 
 24 AD2d 529), the discretionary decision ought not to be disturbed by the courts unless irrational, dishonest or otherwise unlawful.
 
 (Abco Bus Co. v Macchiarola,
 
 52 NY2d 938,
 
 revg
 
 75 AD2d 831,
 
 supra; Square Parking Sys. v Metropolitan Transp. Auth.,
 
 92 AD2d 782,
 
 appeal dismissed
 
 59 NY2d 608;
 
 Matter of Carter v Blake, supra;
 
 10 McQuillin,
 
 supra
 
 § 29.77, at 414.)
 

 Moreover, it cannot be gainsaid that a realistic expectation of obtaining lower contract prices upon a second round of bidding constitutes a reasonable, bona fide ground for rejecting all first round bids and serves the public’s interest in the economical use of public moneys.
 
 (See, Orelli v Ambro,
 
 41 NY2d 952;
 
 Matter of Tri-State Aggregates Corp. v Metropolitan Transp. Auth.,
 
 108 AD2d 645;
 
 Square Parking Sys. v Metropolitan Transp. Auth., supra; Matter of Law Bros. Contr. Corp. v O’Shea,
 
 79 AD2d 1075;
 
 Matter of Knickerbocker Reporting v State Dept. of Public Serv.,
 
 78 AD2d 728,
 
 lv denied 52
 
 NY2d 705;
 
 Matter of Carter v Blake, supra; cf.
 
 General Municipal Law § 100-a.) Nor is the decision to reject all bids rendered arbitrary and capricious solely on the basis of nondiscriminatory postbid changes in the contract specifications (s
 
 ee, Varsity Tr. v Saporita,
 
 71 AD2d 643,
 
 affd
 
 48 NY2d 767) or postbid communications with the individual bidders for the bona fide purpose of ascertaining how contract costs might be reduced (c
 
 f. Matter of Fischbach & Moore v New York City Tr. Auth., supra).
 
 Only upon a showing of actual impropriety or unfair dealing — i.e., "favoritism, improvidence, extravagance, fraud and corruption”
 
 (Jered Contr. Corp. v New York City Tr. Auth., supra,
 
 at p 193) — or other violation of the statutory requirements, can the decision to reject all bids and readvertise for a second round of bidding be deemed unlawful
 
 (cf. Gerzof v Sweeney, supra; Le Cesse Bros. Contr. v Town Bd., supra).
 
 Consequently, where the party
 
 *150
 
 challenging the decision does not satisfy the burden of making such a demonstration, that decision should remain undisturbed.
 
 (See, Janvey & Sons v County of Nassau,
 
 60 NY2d 887, 889,
 
 revg
 
 90 AD2d 807.)
 

 Here, where the court below found only that the postbid activity of the Transit Authority created an "appearance of impropriety” and "cast a doubt” upon its fair dealing with the bidders, the respondents’ decision to seek a rebid ought not to have been disturbed. It may be true, as the majority at the Appellate Division found, that it would have been wiser for the Transit Authority to meet with all the bidders at the same time, instead of separately, in order to avoid the possible appearance of unfair dealing. Likewise, other bid interactions between the Transit Authority and certain bidders may have been more discreet. Nevertheless, as noted in the dissenting opinion of Justice Niehoff, absent some finding that the respondents had, in fact, engaged in some unfair or unlawful practice tainting the impartiality of the competitive bidding process, it was error to grant the petition.
 

 The Transit Authority clearly was empowered to reject all the first round bids, and its expectation of obtaining lower bid prices upon readvertisement was a rational basis for deciding to do so. Petitioner failed to demonstrate that the respondents acted unlawfully with regard thereto or with regard to other postbid conduct. Consequently, the petitioner having neither requested to add to the record nor having sought a hearing on the facts
 
 [2]
 

 (see,
 
 Siegel, NY Prac §§ 554, 556), but, instead, having chosen to rely solely on its documentary submissions which were insufficient to meet its burden, the petition should have been dismissed.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
 

 Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander and Titone concur.
 

 On respondents’ appeal, order reversed, with costs, and petition dismissed. Petitioner’s cross appeal dismissed as academic.
 

 [1]
 

 . Respondents substantially admitted the factual allegations contained in the article 78 petition, denying, however, the legal conclusions drawn therein. At Special Term, the parties relied solely upon their pleadings, documentary submissions and oral argument. No contention was made that the record before the court was insufficient and no request was made for an evidentiary hearing.
 
 (See,
 
 CPLR 409; Siegel, NY Prac § 556.)
 

 [2]
 

 . Indeed, petitioner argues in its brief (Brief of "Respondent-Cross Appellant”, at 72) to this court that permitting respondents to do so at this point would be improper as there is no basis "now [to] complain that [Special Term] lacked sufficient pertinent evidence to make a decision.”