■ In the Matter of WERNER E. SALLE, Doing Business as BROWN CARBONIC SALES COMPANY, Respondent, v OFFICE OF GENERAL SERVICES, STANDARDS AND PURCHASE, EXECUTIVE DEPARTMENT, et al., Appellants.—Kane, J. Appeal from a judgment of the Supreme Court (Kahn, J.), entered September 18, 1986 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to direct respondents to rescind rejection of petitioner's bid and award various contracts to petitioner.

In September 1985, respondent Office of General Services (hereinafter respondent) solicited bids from vendors, including petitioner, for supplying dry ice to State institutions at 10 locations from November 1, 1985 to October 31, 1986. The contracts called for delivery on a frequent basis. The bids were subject to specifications, dated August 27, 1985, which petitioner apparently met. At the bid opening on October 4, 1985, petitioner submitted bids to supply three locations in Buffalo and one in Syracuse. He listed Cardox and Airco as suppliers. Petitioner, who at the time of the bidding was based in Syracuse and had no Buffalo facility, alleges that on October 4, 1985 he received a phone call from Irish Carbonic Company, an existing supplier to State facilities in Buffalo, advising him that his bid of 14 cents a pound for each location was the lowest and that Irish Carbonic would agree to stay out of Syracuse if petitioner would stay out of Buffalo; petitioner claims that he turned down the offer.

On October 8, 1985, respondent notified petitioner that he was the low bidder for the Buffalo and Syracuse locations and that it had to assess his qualifications. Irish Carbonic was the

second lowest bidder on all Buffalo site bids with prices per pound of 15.8, 22 and 16.4 cents. In response to queries from respondent, the facilities to be serviced in Buffalo and Syracuse said they had not had any experience with petitioner and noted the importance of local suppliers for prompt delivery. An October 10, 1985 Dun & Bradstreet report that came to respondent's attention noted that petitioner had filed for bankruptcy and his repayment to suppliers was scheduled to be completed in 1986. On October 23, 1985, an inspector for respondent reported that petitioner would establish a facility in Buffalo within three weeks of the contract award and that "the firm's owner was most cooperative and appeared willing to do what's necessary to successfully complete this contract".

On November 1, 1985, Irish Carbonic sent an unsolicited letter extolling its virtues as a dependable supplier with a proven track record that offset prices slightly higher than those of "the competition". The letter blamed its competition's alleged inability to grow in the dry ice business on their use of Cardox and Airco, allegedly undependable suppliers. Irish Carbonic lists Cardox, however, as one of its named suppliers. On November 6, 1985, after a follow-up inspection, the inspector reported that petitioner had leased facilities in Buffalo but had not yet moved its equipment from Syracuse. On November 15, 1985, respondent indicated that awards of the four contracts involving petitioner were pending while his qualifications were investigated. Petitioner wrote respondent on November 27, 1985 describing his capabilities. On December 17, 1985, respondent rejected all bids for the Buffalo-area contracts, explaining to the State Comptroller: "Based on * * * our inspection of [petitioner's] plant * * * and a Dun & Bradstreet report, [petitioner's] bid is rejected for not having actual working facilities and personnel in the Buffalo area * * * [T]he agencies attest to the importance of having a local facility service their needs."

By a letter dated January 24, 1986, petitioner advised respondent of the opening of its new Buffalo facility as of January 28, 1986. On January 28, 1986, petitioner received a new bid proposal for supplying the Buffalo sites from March 1, 1986 to October 1, 1986. The new proposal incorporated additional requirements that the bidders' inventory and shipping location be within a 75-mile radius of the facility served and have been in operation, storing and shipping dry ice, *for at least one year at the local site.* Respondent asserts that the new requirements were needed to insure that vendors could make prompt delivery of a quickly deteriorating product and

had demonstrated the ability to service vendors by already having performed in the geographic area for some time. On February 6, 1986, respondent awarded the dry ice contract for the Syracuse facility to petitioner. The Buffalo-area contracts were eventually awarded to the previous supplier, Irish Carbonic, the only firm submitting a bid and apparently the only one able to meet the new bid specifications.

Petitioner commenced the instant CPLR article 78 proceeding for a judgment directing respondent to rescind its rejection of petitioner's bid and to award it the Buffalo-area contracts. Supreme Court subsequently issued its decision, finding arbitrary and capricious the rejection of initial bids and the requirement that suppliers have a year's experience at a local site, but upholding the requirement for a local supplier. The court concluded by directing that respondent rescind the rejection of petitioner's bid for the Buffalo facilities and award petitioner those contracts. This appeal ensued.

We find that the initial rejection of bids was reasonable based on the stated reason that petitioner, the low bidder, could not as of the date of the bid, the contract term commencement or the bid rejection meet the demand of the facilities serviced for delivery from a local operation. The reasons for rejection also refer to Dun & Bradstreet reports, apparently indicating concern about petitioner's financial stability. In sum, respondent's actions with respect to the above were permissible under State Finance Law § 174 to determine if petitioner, the low bidder, was the lowest responsible bidder, based on his reliability, the quickly deteriorating nature of the product involved and the frequent delivery required (see, Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth., 66 NY2d 144).

Petitioner argues that the specifications respondent added on the second round of bidding lacked a rational basis. In this regard, we agree with Supreme Court's conclusion that the requirement that the supplier be located within 75 miles of the facility to be serviced was rational, but that there was no rational basis for the requirement that suppliers have at least one year of experience in local operations. As indicated previously, the record here indicates that all first-round bids were rejected because the low bidder, petitioner, did not have a local site and that on round two, the requirement of local delivery was incorporated into the specifications, along with a requirement of one year of local operation. It is reasonable to accept respondent's explanation that the new specifications were devised because the investigation of petitioner led to the

realization that local facilities were crucial to reliable service. However, respondent provides no rational basis to support the requirement of one year's operation in a local site, which requirement resulted in precluding responsible local bidders with proven records in other locations, such as petitioner, from bidding.

Having reached this determination, we conclude that the matter should be remitted to respondent with directions that in future rebidding, the offending requirement be omitted *(see, Matter of De Foe Corp. v Larocca,* 128 Misc 2d 39, 41, *affd* 110 AD2d 965, *lv denied* 65 NY2d 603; *see also, Matter of Stilsing Elec. v County of Albany,* 97 AD2d 631). Under the circumstances of this case, Supreme Court abused its discretion by directing respondent to proceed in a specified manner *(see,* State Finance Law § 174).

Judgment modified, on the law and the facts, without costs, by reversing so much thereof as directed respondents to award the contracts to petitioner; matter remitted to respondents for further proceedings not inconsistent herewith; and, as so modified, affirmed. Mahoney, P. J., Kane, Weiss, Yesawich, Jr., and Levine, JJ., concur.