■ P & A Brothers, Inc., Respondent-Appellant, v City of New York Department of Parks & Recreation et al., Appellants-Respondents.—Order of the Supreme Court, New York County (Alice Schlesinger, J.), entered on September 24, 1991, which granted defendants' motion to dismiss the complaint to the extent of dismissing only the second and third causes of action and denying dismissal of the first cause of action, is unanimously modified on the law to the extent of dismissing the first cause of action, and otherwise affirmed, without costs or disbursements.

Plaintiff P & A Brothers, Inc. was the operator of a newsstand located on the northeast corner of Third Street and Avenue of the Americas in Manhattan pursuant to a permit issued by defendant New York City Parks Department, which had jurisdiction over the matter due to the presence of a small park nearby. When the permit expired, the Parks Department solicited competitive bids for a successor and finally accepted an offer, awarding a new permit after having rejected all bids in the first two rounds of the process. Plaintiff had bid $52,000, and the permit was given to a bidder who offered $80,000. Plaintiff, however, refused to vacate the newsstand and commenced this action seeking to compel the Parks Department to accept its bid and allow it to continue operations or, alternatively, to enjoin its removal without legal process. The Supreme Court, in denying in part defendants' motion to dismiss the complaint by sustaining the first cause of action, held that while plaintiff was merely a licensee with an expired permit and had failed to demonstrate actual impropriety or unfair dealings by the Parks Department, the City

was nonetheless required to invoke formal legal proceedings in order to eject plaintiff from the stand. In that regard, the court observed that it could not "condone use of self-help to oust plaintiff from the newsstand. RPAPL 713 (6) [properly RPAPL 713 (7)] establishes a procedure to recover possession of property which is being held by a licensee whose license has been revoked or terminated provided a ten day notice to recover the property is served".

It should be noted that plaintiff claims that since it paid $11,000 to the prior operator of the stand in accordance with the bidding requirements of the Parks Department in 1983 when it first acquired the permit, it paid for and now owns the newsstand. Therefore, plaintiff asserts, it cannot be evicted and have its possessions seized without any semblance of due process or just compensation. Plaintiff also contends that it has made substantial improvements over the years and is entitled to remain in the stand until either proper procedures are created for its sale or disposal or the City compensates plaintiff for its property. Defendants, in response, state that the 1983 request for bids which requested the $11,000 payment explained that this money was only for the purpose of reimbursing the previous operator for construction expenditures, not to purchase the stand. As for plaintiff's purported improvements, defendants note that the permits themselves declare that all equipment installed by the operator becomes the property of the City. Although the Court appropriately rejected plaintiff's second and third causes of action for a declaration that it was the highest qualified bidder in the first round of bidding and for judgment directing the City to award it the newsstand permit, the first cause of action for injunctive relief should also have been denied. The Supreme Court was simply in error that plaintiff could only be removed by legal process.

While it is true that tenants as defined in RPAPL 711 may be evicted only through lawful procedure, others, such as licensees and squatters, who are covered by RPAPL 713 are not so protected (see, Morillo v City of New York, 178 AD2d 7). Thus, RPAPL 713 merely permits a special proceeding as an additional means of effectuating the removal of nontenants, but it does not replace an owner's common-law right to oust an interloper without legal process (see, Bliss v Johnson, 73 NY 529). Indeed, New York's current forcible entry and detainer statute (RPAPL 853) is very similar to the one referred to in Fults v Munro (202 NY 34) more than 80 years ago. The forcible entry and detainer law was specifically

enacted to discourage undue intimidation and violence in the ejection of persons from real property by providing for treble damages under certain circumstances, not to prohibit resort to summary ouster. The decision by the Court of Appeals in *Napier v Spielmann* (196 NY 575, *affg on opn at* 127 App Div 567) that a servant or licensee acquires no possessory interest in property is still valid authority.

The Supreme Court failed to distinguish between those whose interest in property rises to the status of tenancy and must be evicted by legal process and those situations in which nontenants may be removed summarily so long as it is done without violence. As a licensee involved in an arms-length commercial relationship with the Parks Department, plaintiff is subject to ouster by the City without legal process in the latter's exercise of its rights as a landowner. The subject newsstand was licensed by the Parks Department, which has purview over "the sidewalks immediately adjoining" parks (NY City Charter § 533 [a] [1]), through a concession awarded by competitive bidding. The Department's permits are issued under whatever conditions are deemed appropriate by the Parks Commissioner and are "terminable at will by the Commissioner upon notice to the permittee" (56 RCNY 1-03 [b] [2]). In fact, the permit itself provides that it may be revoked and is not assignable. Plaintiff's claim of ownership derives entirely from the $11,000 it was mandated to pay to the prior operator of the stand, but all bidders at the time were advised that the money was for reimbursement, and no reference was ever made to legal title. Moreover, the assertion of ownership is belied by the requirement that any equipment added to the stand becomes the City's property.

The Supreme Court, however, correctly recognized that the acceptance or rejection of bids is a determination within the discretion of the agency and may not be disturbed absent actual impropriety or unfair dealings, neither of which are even alleged here. Further, as defendants aptly point out, the ability to reject all bids is an integral part of the public contract process, which is expressly authorized by law (General Municipal Law § 103 [1]; NY City Charter § 313 [b] [2]). In *Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth.* (66 NY2d 144, 148), the Court of Appeals noted that the legislation dealing with the bidding process was "not enacted to help enrich the corporate bidders but, rather, [was] intended for the benefit of the taxpayers". Consequently, since the expectation of obtaining better contract prices at another round of bidding is a reasonable basis for declining all previ-

ous bids, "[o]nly upon a showing of actual impropriety or unfair dealing * * * or other violation of the statutory requirements, can the decision to reject all bids and readvertise for a second round of bidding be deemed unlawful" *(Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth., supra,* at 149). In the absence of any merit to this action, the Supreme Court should have granted the motion in full. Concur—Milonas, J. P., Ellerin, Kupferman, Ross and Smith, JJ.