This opinion is uncorrected and subject to revision before
publication in the New York Reports.
------------------------------------------------------------------

No. 182
In the Matter of ACME Bus Corp.,
            Appellant,
         v.
Orange County, et al.,
            Respondents.

Richard C. Hamburger, for appellant.
Carol C. Pierce, for respondents Orange County et al.

FAHEY, J.:

        In this CPLR article 78 proceeding to annul Orange

County's award of transportation contracts to Quality Bus

Service, LLC (Quality) and VW Trans, LLC (VW), the question

presented is whether the award was arbitrary and capricious.  We

hold that it was.  We address whether evaluation criteria for

public bids submitted pursuant to General Municipal Law § 104-b must be followed as set out in the requests for proposals or if the criteria may be changed, after the receipt of proposals, by the government agency responsible for evaluating them.

                              I.

In May 2013, the Orange County Department of General Services issued a request for proposals (RFP) from companies to provide transportation of children receiving preschool special education services in three transportation zones in Orange County. The County solicited proposals for three-year contracts for each zone, with options for two successive one-year extensions. The RFP evaluated proposals in nine categories, with a certain number of points assigned to each category, for a total of 100. The first eight categories measured performance by various criteria, while the ninth, worth 20 points, evaluated cost.

The RFP stated that "[t]he Offeror submitting the lowest cost proposal will be awarded 20 points. Awarding of points to the remaining Offerors will be based on percentage to points ratio." In the same sentence, the RFP explained by way of "example" that "if the total cost [difference] between the lowest Offeror and the next lowest Offeror is 10% then Offeror two will have 2 points deducted from the maximum score of 20."

The RFP further provided that "[t]he submission of a proposal implies the Offeror's acceptance of the evaluation

criteria and Offeror's acknowledgment that subjective judgments must be made by the Evaluation Committee . . . . The County reserves the right to: accept other than the lowest price offer, waive any informality, or reject any or all proposals, with or without advertising for new proposals, if in the best interest of the County."

Quality submitted a cost proposal for each of the three zones. VW submitted a cost proposal for the third zone only. ACME Bus Corp. (ACME), which held the contract at the time, submitted two alternative proposals, one containing pricing for each of the zones, and one providing an estimate for all three zones combined, at a discounted price. Under both proposals, ACME had the highest cost for the three zones.

In July 2013, Orange County awarded transportation contracts for the first two zones to Quality and for the third zone to VW. Transportation services pursuant to the contracts commenced on September 1, 2013, and continued until August 31, 2016; the County then exercised its first option to extend the contracts, which now expire on August 31, 2017.

After it was notified of the award, ACME commenced this article 78 proceeding against the County, Quality, and VW, seeking to vacate the award of the contracts "as arbitrary and capricious, . . . affected by an error of law, and . . . made in violation of lawful procedure." ACME alleges a number of defects in the County's process of choosing its transportation providers,

only one of which is pertinent here.

The County disclosed the proposals submitted by Quality and VW, as well as the score sheets used by the County to evaluate the proposals. As the parties interpret these documents,[1] Quality had the highest overall scores for the first two zones, while VW had the highest total score for the third. In the cost category, ACME had been awarded only 8 points out of 20, i.e. a 12-point deduction. ACME contended that if it had been awarded the RFP's "percentage to points ratio" deduction for cost, it would have received only a 5.4-point deduction and achieved a higher total score than VW in the third zone.

The County, seeking dismissal of the proceeding, submitted an affidavit of the employee of the County's consultant transportation management company who had been responsible for scoring the RFP's cost category. The employee wrote that

> "[i]n evaluating the cost proposals and
> determining a point to percentage ratio upon
> which to evaluate and score the three
> offerors, it was determined that we could not
> use the example as set forth in the RFP . . .
> because in Zone 3, there was only a 7%
> difference in price between the lowest bidder
> VW and the next lowest bidder Quality. . . .
> Therefore, if we used the example set forth
> in the RFP i.e. 2 points per 10% difference,
> we would not have been able to deduct any
> points from Quality."

The transportation management company employee then

---

[1] We are troubled by the fact that the County, in seeking to demonstrate to the Court that VW had the highest score for the third zone, cites pages from the record that contains single score sheets for that zone, and not the average of the scores.

stated that "it was determined that the County, in scoring the offerors on price . . . would use a 2 point deduction for every 4% difference in price, rounding to the nearest whole number," instead of a 2-point deduction for every 10%.

Supreme Court dismissed the proceeding, ruling that ACME "had failed to sustain its burden of demonstrating that the [County's] determination lacked a rational basis or that actual impropriety, unfair dealing or some other violation of statutory requirements occurred."  The court "decline[d] petitioner's tacit invitation to redo the . . . scoring of the proposals," stating that "the scorers had a rational basis for their determination and the court's inquiry there ends."

The Appellate Division affirmed (Matter of ACME Bus Corp. v Orange County, 126 AD3d 688 [2d Dept 2015]).

We granted ACME leave to appeal (26 NY3d 906 [2015]), and now reverse.

II.

ACME contends that the County's scoring mechanism in the cost category deviated from the formula stated in the RFP, and that its award was therefore arbitrary and capricious within the meaning of CPLR 7803 (3).  We agree.

The contracts at issue here, "requir[ing] the exercise of specialized or technical skills, expertise or knowledge" (Matter of Omni Recycling of Westbury, Inc. v Town of Oyster Bay, 11 NY3d 868, 869 [2008]), were not subject to the competitive

bidding statute (see General Municipal Law § 103), but were awarded under General Municipal Law § 104-b.  That statute requires contracts to "be procured in a manner so as to assure the prudent and economical use of public moneys in the best interests of the taxpayers of the political subdivision or district, to facilitate the acquisition of goods and services of maximum quality at the lowest possible cost under the circumstances, and to guard against favoritism, improvidence, extravagance, fraud and corruption" (General Municipal Law § 104-b [1] [emphasis added]).

To further these objectives, the statute specifies that the County "shall adopt internal policies and procedures governing all procurements of goods and services which are not required to be made pursuant to the competitive bidding requirements . . . or of any other general, special or local law" (id. [emphasis added]).  The written policy adopted by the County pursuant to this requirement specifies, in Part V (Procurement of Professional Services), that the County's award of a contract pursuant to an "RFP must be made in accordance with the evaluation criteria specified in the RFP" (emphasis added).

Here, the County deviated from the criteria specified in its RFP when it evaluated the proposals received pursuant to its request.  The emphatic language used in the RFP's paradigm of a percentage to points ratio -- stating that if a 10% cost difference exists between the lowest offeror and the next lowest,

then the latter "will have 2 points deducted from the maximum score of 20" -- makes clear that the "example" was meant to explain that a percentage to points ratio is one in which a one percent cost difference translates to one percent of the total number of points allocated to cost.  Instead, the County used a 2-point deduction for every 4% difference in price.[2]  Applying this new formula, a one percent cost difference corresponded to 2.5%, rather than one percent, of the number of points assigned to cost.[3]

_____

[2]    As the transportation management company employee's affidavit revealingly states, this was "a point to percentage ratio," rather than the "percentage to points ratio" contemplated by the RFP.

[3]    The County, in trying to explain why it deviated from its own specification, provided contradictory explanations that lack a rational basis.  In an email, the transportation management company employee claimed that she had awarded points in the cost category by deducting a certain number of points for every $10,000 difference between the cost proposals.  Such a method bears no resemblance to a percentage to points ratio. Shortly thereafter, the same employee submitted the affidavit in which she stated that the County deducted two points for every 4% difference in price.  In an attempt to justify this change, the employee alluded to "a 7% difference in price between the lowest bidder VW and the next lowest bidder Quality" in the third zone, and suggested that no points could have been deducted from Quality had the RFP's formula been used.  The reasoning is spurious.  A 7% difference between VW and Quality in the third zone would have equated to a 1.4-point deduction to Quality, the second-lowest offeror, not a zero deduction, and this number could have been rounded down to a 1-point deduction.
Additionally, the record reflects that the County awarded 18 points to Quality for cost in the third zone.  Under the formula that the County purportedly used, a 7% difference would have equated to a 4-point deduction or 16, rather than 18, points for Quality in the third zone, bringing into question whether the

The County abandoned the cost formula it had promised to apply and instead created a new formula that disfavored ACME. This was arbitrary and capricious for two, independent reasons.

First, the County's failure to follow the cost category evaluation criteria outlined in the RFP was in violation of the County's own procurement policy, stating that the "award . . . must be made in accordance with the evaluation criteria specified in the RFP" (emphasis added). We have repeatedly held in a variety of contexts that an agency acts arbitrarily when it fails to comply with its own rules (see e.g. Vukel v New York Water & Sewer Mains, Inc., 94 NY2d 494, 497 [2000]; Frick v Bahou, 56 NY2d 777, 778 [1982]). The same principle applies to the County here.

The second reason has significance that extends beyond the present case. In Matter of AAA Carting & Rubbish Removal, Inc. v Town of Southeast (17 NY3d 136 [2011]), we held that a municipal contract, awarded pursuant to the competitive bidding statute, should be vacated if the municipality "accept[ed] a higher bid based on subjective assessment of criteria not specified in the bid request," because such an action "gives rise to speculation that favoritism, improvidence, extravagance, fraud or corruption may have played a role in the decision" (AAA Carting & Rubbish Removal, Inc., 17 NY3d at 144). We conclude

_____

County used that formula after all.

that the policy grounds articulated in AAA Carting with respect to the competitive bidding procedures of General Municipal Law § 103 apply to the procedures under § 104-b at issue here.

We now hold that an award of a contract under General Municipal Law § 104-b is arbitrary and capricious if the municipality evaluates a proposal using a standard that deviates from a standard expressly set forth in the RFP.  Such a deviation betrays a lack of "sound basis in reason" for the determination (Matter of Murphy v New York State Div. of Hous. & Community Renewal, 21 NY3d 649, 652 [2013]; see generally Pell v Board of Education, 34 NY2d 222, 231 [1974]).

Our holding promotes the goals of fairness and the prevention of fraud and corruption in the bidding process.  The offeror is given notice of the standards to be applied and acts accordingly.  When different standards are applied, the process is subverted.  Changing the expressly defined rules mid-way gives rise to speculation of fraud or corruption.

The County would have us distinguish General Municipal Law §§ 103 and 104-b in this regard.  The statutes, however, are alike in a fundamental legislative purpose.  The primary purposes of competitive bidding under General Municipal Law § 103 "are the (1) protection of the public fisc by obtaining the best work at the lowest possible price; and (2) prevention of favoritism, improvidence, fraud and corruption in the awarding of public contracts" (AAA Carting & Rubbish Removal, Inc., 17 NY3d at 142

[internal quotation marks omitted] [emphasis added]).  Similarly, under General Municipal Law § 104-b, services that are not required by law to be procured by competitive bidding must nevertheless "be procured in a manner so as . . . to guard against favoritism, improvidence, extravagance, fraud and corruption" (General Municipal Law § 104-b [1]; see also Assembly Sponsor's Mem in Support, Bill Jacket, L 1991, ch 413 at 22).  It is true that, pursuant to General Municipal Law § 103, the contract must be awarded to the lowest responsible bidder, whereas under General Municipal Law § 104-b a contract may be awarded to one other than the lowest responsible dollar offeror if the municipality can justify the award (see General Municipal Law § 104-b [2] [e]).  However, insofar as the prevention of favoritism, fraud and corruption is concerned, the purpose is identical.  The policy reasoning underlying our decision in AAA Carting & Rubbish Removal, Inc. -- "guard[ing] against such factors" (AAA Carting & Rubbish Removal, Inc., 17 NY3d at 144) -- is equally applicable in the General Municipal Law § 104-b context under the circumstances here, where a municipality evaluates a proposal by a standard which is not consistent with that set forth in the RFP.

The County emphasizes that it was changing its standards to ensure that the lowest cost proposal was accepted. If the County believed that the RFP's methodology did not adequately reflect the importance of the cost consideration, its

only option was to reject all the proposals and start over with an RFP that better reflected the weight to be given to cost (see AAA Carting & Rubbish Removal, Inc., 17 NY3d at 144). The County could not change its own rules mid-game, no matter the benefits. Indeed, to allow such conduct would be an invitation to impropriety. It would give any corrupt municipal employee a blueprint for avoiding judicial review of bid-rigging: first, advertise one set of standards in the request for bids; then, after the proposals have been received and the sealed portions opened, devise new standards to enable selection of your favored company, while making sure that your selection seems superficially reasonable from an economic point of view.

The dissent's suggestion that it is improper to overturn the County's award where there is no evidence of "improper motives" (dissenting op at 5) fails to recognize that awards may be overturned even without evidence of actual impropriety. The test is whether the award is "irrational, dishonest or otherwise unlawful" (AAA Carting & Rubbish Removal, Inc., 17 NY3d at 142, quoting Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth., 66 NY2d 144, 149 [1985]). We overturn actions in which agencies fail to comply with their own rules not only to combat actual unfairness, but also to uphold the public's perception that these agencies act fairly in awarding contracts. Moreover, the dissent's hypothesis that "[h]ad Orange County provided no example, it could have justified

its choice of the actual formula as rational" (dissenting op at 6) lacks merit, because the meaning of a percentage to points ratio is commonly understood, with or without an example.  The new formula used by the County in the dissent's hypothetical scenario would still represent a material change from the RFP criterion.

In sum, the County acted arbitrarily as a matter of law by accepting proposals based on a method of evaluation that is inconsistent with the standard set out in its RFP.  Its determination must be set aside.  There is no necessity for us to consider ACME's remaining arguments.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.

Matter of ACME Bus Corp. v Orange County

No. 182

GARCIA, J.(dissenting):

ACME, an unsuccessful bidder, seeks to vacate a contract that Orange County awarded to the lowest bidder after evaluating all proposals pursuant to a proper RFP. ACME bore the burden here of demonstrating "actual impropriety, unfair dealing, or some other violation of statutory requirements when challenging an award of a public contract" (ACME Bus Corp. v Bd. of Educ. of Roosevelt Union Free Sch. Dist., 91 NY2d 51, 55 [1997]). Because ACME has failed to demonstrate that this contract was awarded arbitrarily and capriciously or without rational basis, I would decline to set aside Orange County's decision.

ACME submitted two proposals, one with pricing for each zone separately and one with combined, discounted pricing for all three zones. There is no dispute that in terms of cost -- under both proposals -- ACME was the most expensive. Nevertheless, the majority faults Orange County for awarding the contract to the lower bidder because of what it characterizes as a wholesale "deviat[ion] from the criteria specified in its RFP" (majority op

- 1 -

at 6).  A review of the language of the RFP and the review by Orange County of the proposals shows that this was not the case.

        The RFP stated that the cost category would be worth 20 percent of the overall score, demonstrating Orange County's assessment of the weight to be given to this important factor. Further, the RFP noted this category would be scored on a "percentage to points" ratio and provided an example of how this ratio would be applied: "The Offeror submitting the lowest cost proposal will be awarded 20 points.  Awarding of points to the remaining Offerors will be based on percentage to points ratio; *example*: if the total cost between the lowest Offeror and the next lowest Offeror is 10% then Offeror two will have 2 points deducted from the maximum score of 20" (emphasis added).  The majority describes the example's language as "emphatic" (majority op at 6).  But the language is far from emphatic, nor does it contain any language that supports the majority's interpretation of the example as mandatory.  The RFP could have stated that "the percentage to points ratio will use the following formula." Instead, the RFP stated that it would use a percentage to points ratio, and then provided a hypothetical example of its application.  While Orange County did not apply the formula given in the example, a rational basis existed for applying the ratio used, and the failure to do so is not equivalent to changing the RFP's criteria (see Awl Indus. v Triborough Bridge & Tunnel Auth., 41 AD3d 141, 142-143 [1st Dept 2007]).

The scorer of the cost category explained that the formula actually applied differed from the example provided in the RFP in an attempt to "establish a point to percentage ratio that could be applied to each and every cost proposal in each zone fairly and accurately representing the proposed costing impact to the County" in light of a very small difference in price between the lowest bidder VW and the next lowest bidder Quality.  The record supports this argument.  Orange County rationally decided that had it applied the ratio as demonstrated in the RFP example, the significant price differential between ACME and the other proposals would not have been adequately reflected and so the differential in the points awarded would not have accurately reflected the weight to be given to this cost consideration.  As the example was just that -- an example -- the decision to deviate from the hypothetical was not a failure to follow the agency's own rules (see majority op at 8) and was not arbitrary and capricious.  Moreover, the formula actually used by Orange County ensured that the final awards accurately reflected cost.  Had the formula in the example been used instead,[1] the proposals would have been scored in a way that did not appropriately "assure the prudent and economical use of public

---

[1] Even if the proposals had been scored in complete compliance with the descriptive example provided in the RFP, ACME still would have scored lower in the cost category than Quality in Zones 1 and 2.  While ACME would have had a higher total score than VW in Zone 3 under that formula, VW's proposal still cost approximately $68,000 per month less than ACME's in Zone 3.

moneys in the best interests of the taxpayer" (General Municipal Law § 104-b [1]).  Accordingly, Orange County's decision not to apply the percentage to points ratio in the exact manner described in the RFP's example had a rational basis and ACME has failed to demonstrate "favoritism, improvidence, fraud [or] corruption stemming from the process used to award the subject school transportation contracts" (ACME Bus Corp., 91 NY2d at 56).

Orange County's actions here were entirely consistent with the guiding principles of General Municipal Law § 104-b governing the RFP process, which is intended to be less stringent than section 103's competitive bidding procedures (see Matter of Quest Diagnostics, Inc. v County of Suffolk, 21 Misc 3d 944, 951 [Sup Ct Suffolk County 2008] [noting that the Legislature intended by means of General Municipal Law § 104-b to "afford[] the municipalities a measure of discretion in determining what constitutes their best interests"]); Awl Indus., 41 AD3d at 142-143 ["(W)hile it is true that all who submit proposals (under RFPs) must be treated fairly, there is no legal requirement that a final contract must conform to the original RFP"]).  The majority relies heavily on cases discussing contracts awarded pursuant to General Municipal Law § 103, which is inapplicable to the RFP process here.  The fact that section 104-b bestows the counties with increased flexibility in the conduct of their RFPs than that which applies under section 103 is unacknowledged by the majority.  Even the cases applying section 103 on which the

majority relies, however, focus on preventing municipalities from awarding a contract to a "higher bid" (majority op at 8-11 citing AAA Carting & Rubbish Removal, Inc., 17 NY3d 136, 144 [2011]). While we agree with the majority that section 104-b, like section 103, focuses on protection of the public fisc and prevention of fraud, the majority's holding undoes an award that protected the former without any evidence at all that Orange County acted with improper motives.

In addition, the majority's analysis of Orange County's procurement policy overlooks the fact that, had Orange County awarded the contract to ACME, it would have had to address the requirements of section 104-b. Section 104-b mandates a written justification when an award does not go to the lowest priced proposal that must address "how such an award furthers the public good; assures the prudent use of taxpayers' money; ensures that the purchased goods are of the best quality at the lowest possible cost in light of the circumstances existing; and guards against favoritism, extravagance, fraud and/or corruption." An award to ACME, as a higher bidder, would have required Orange County to submit such a written justification addressing those factors, yet the record does not demonstrate that Orange County would have been able to articulate proper justifications sufficient to comply with this policy, in light of the $68,000 per month cost difference between ACME and VW. Its only justification would have been its inability to deviate from an

example of the formula provided in the RFP despite the fact that it did not accurately account for cost differential.

It seems unfair to suggest that refusing to overturn as arbitrary and capricious a county's use of a ratio that more accurately reflects the cost differential among bidders, and results in the award of the relevant contract to the lowest bidder, will result in a green light for municipal employees to engage in impropriety (majority op at 11).  Rather, the majority's holding empowers losing bidders to sue counties immediately upon the award of the contract to a lower bidder, and will require counties to factor into their budgets the cost of article 78 proceedings and FOIL requests following the conduct of any RFP process (see e.g. ACME Bus Corp. v County of Suffolk, 136 AD3d 896 [2d Dept 2016]); Wilson Omnibus Corp. v Fallsburg Cent. Sch. Dist., 167 AD2d 803 [3d Dept 1990]).

Had Orange County provided no example, it could have justified its choice of the actual formula as rational, indeed prudent.  Perhaps the only lesson from today's decision is that counties should leave themselves the flexibility afforded by section 104-b by not providing any such guidance or by making clear that any example is just that and not an invitation for costly litigation that ultimately undermines the very purpose of that statute.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order reversed, with costs, and matter remitted to Supreme Court, Orange County, for further proceedings in accordance with the opinion herein.  Opinion by Judge Fahey.  Chief Judge DiFiore and Judges Rivera, Abdus-Salaam and Stein concur.  Judge Garcia dissents and votes to affirm in an opinion in which Judge Pigott concurs.


Decided November 22, 2016