*421 OPINION OF THE COURT
Fahey, J.
In this CPLR article 78 proceeding to annul Orange County’s award of transportation contracts to Quality Bus Service, LLC and VW Trans, LLC, the question presented is whether the award was arbitrary and capricious. We hold that it was. We address whether evaluation criteria for public bids submitted pursuant to General Municipal Law § 104-b must be followed as set out in the requests for proposals or if the criteria may be changed, after the receipt of proposals, by the government agency responsible for evaluating them.
L
In May 2013, the Orange County Department of General Services issued a request for proposals (RFP) from companies to provide transportation of children receiving preschool special education services in three transportation zones in Orange County. The County solicited proposals for three-year contracts for each zone, with options for two successive one-year extensions. The RFP evaluated proposals in nine categories, with a certain number of points assigned to each category, for a total of 100. The first eight categories measured performance by various criteria, while the ninth, worth 20 points, evaluated cost.
The RFP stated that “[t]he Offeror submitting the lowest cost proposal will be awarded 20 points. Awarding of points to the remaining Offerors will be based on percentage to points ratio.” In the same sentence, the RFP explained by way of “example” that “if the total cost [difference] between the lowest Offeror and the next lowest Offeror is 10% then Offeror two will have 2 points deducted from the maximum score of 20.”
The RFP further provided that
“[t]he submission of a proposal implies the Offeror’s acceptance of the evaluation criteria and Offeror’s acknowledgment that subjective judgments must be made by the Evaluation Committee. . . . The County reserves the right to: accept other than the lowest priced offer, waive any informality, or reject *422 any or all proposals, with or without advertising for new proposals, if in the best interest of the County.”
Quality submitted a cost proposal for each of the three zones. VW submitted a cost proposal for the third zone only. ACME Bus Corp., which held the contract at the time, submitted two alternative proposals, one containing pricing for each of the zones, and one providing an estimate for all three zones combined, at a discounted price. Under both proposals, ACME had the highest cost for the three zones.
In July 2013, Orange County awarded transportation contracts for the first two zones to Quality and for the third zone to VW. Transportation services pursuant to the contracts commenced on September 1, 2013, and continued until August 31, 2016; the County then exercised its first option to extend the contracts, which now expire on August 31, 2017.
After it was notified of the award, ACME commenced this article 78 proceeding against the County, Quality, and VW, seeking to vacate the award of the contracts “as arbitrary and capricious, . . . affected by an error of law, and . . . made in violation of lawful procedure.” ACME alleges a number of defects in the County’s process of choosing its transportation providers, only one of which is pertinent here.
The County disclosed the proposals submitted by Quality and VW, as well as the score sheets used by the County to evaluate the proposals. As the parties interpret these documents,[1] Quality had the highest overall scores for the first two zones, while VW had the highest total score for the third. In the cost category, ACME had been awarded only eight points out of 20, i.e. a 12-point deduction. ACME contended that if it had been awarded the RFP’s “percentage to points ratio” deduction for cost, it would have received only a 5.4-point deduction and achieved a higher total score than VW in the third zone.
The County, seeking dismissal of the proceeding, submitted an affidavit of the employee of the County’s consultant transportation management company who had been responsible for scoring the RFP’s cost category. The employee wrote that
“[i]n evaluating the cost proposals and determining a point to percentage ratio upon which to evaluate *423 and score the three offerors, it was determined that we could not use the example as set forth in the RFP . . . because in Zone 3, there was only a 7% difference in price between the lowest bidder VW and the next lowest bidder Quality. . . . Therefore, if we used the example set forth in the RFP i.e. 2 points per 10% difference, we would not have been able to deduct any points from Quality.”
The transportation management company employee then stated that “it was determined that the County, in scoring the offerors on price . . . would use a 2 point deduction for every 4% difference in price, rounding to the nearest whole number,” instead of a two-point deduction for every 10%.
Supreme Court dismissed the proceeding, ruling that ACME “ha[d] failed to sustain its burden of demonstrating that the [County’s] determination lacked a rational basis or that an actual impropriety, unfair dealing or some other violation of statutory requirements occurred.” The court “decline[d] petitioner’s tacit invitation to redo the . . . scoring of the proposals,” stating that “the scorers had a rational basis for their determination and the court’s inquiry there ends.”
The Appellate Division affirmed (Matter of ACME Bus Corp. v Orange County, 126 AD3d 688 [2d Dept 2015]).
We granted ACME leave to appeal (26 NY3d 906 [2015]), and now reverse.
I I—I I—I
ACME contends that the County’s scoring mechanism in the cost category deviated from the formula stated in the RFP, and that its award was therefore arbitrary and capricious within the meaning of CPLR 7803 (3). We agree.
The contracts at issue here, “requiring] the exercise of specialized or technical skills, expertise or knowledge” (Matter of Omni Recycling of Westbury, Inc. v Town of Oyster Bay, 11 NY3d 868, 869 [2008]), were not subject to the competitive bidding statute (see General Municipal Law § 103), but were awarded under General Municipal Law § 104-b. That statute requires contracts to
“be procured in a manner so as to assure the prudent and economical use of public moneys in the best interests of the taxpayers of the political *424 subdivision or district, to facilitate the acquisition of goods and services of maximum quality at the lowest possible cost under the circumstances, and to guard against favoritism, improvidence, extravagance, fraud and, corruption” (General Municipal Law § 104-b [1] [emphasis added]).
To further these objectives, the statute specifies that the County “shall adopt internal policies and procedures governing all procurements of goods and services which are not required to be made pursuant to the competitive bidding requirements . . . or of any other general, special or local law” {id. [emphasis added]). The written policy adopted by the County pursuant to this requirement specifies, in part v (procurement of professional services), that the County’s award of a contract pursuant to an “RFP must be made in accordance with the evaluation criteria specified in the RFP” (County of Orange Procurement Policy part V [E] [Mar. 2012] [emphasis added]).
Here, the County deviated from the criteria specified in its RFP when it evaluated the proposals received pursuant to its request. The emphatic language used in the RFP’s paradigm of a percentage to points ratio—stating that if a 10% cost difference exists between the lowest offeror and the next lowest, then the latter “will have 2 points deducted from the maximum score of 20”—makes clear that the “example” was meant to explain that a percentage to points ratio is one in which a one percent cost difference translates to one percent of the total number of points allocated to cost. Instead, the County used a two-point deduction for every 4% difference in price.[2] Applying this new formula, a one percent cost difference corresponded to 2.5%, rather than one percent, of the number of points assigned to cost.[3]
*425 The County abandoned the cost formula it had promised to apply and instead created a new formula that disfavored ACME. This was arbitrary and capricious for two, independent reasons.
First, the County’s failure to follow the cost category evaluation criteria outlined in the RFP was in violation of the County’s own procurement policy, stating that the “award . . . must be made in accordance with the evaluation criteria specified in the RFP” (emphasis added). We have repeatedly held in a variety of contexts that an agency acts arbitrarily when it fails to comply with its own rules (see e.g. Matter of Vukel v New York Water & Sewer Mains, 94 NY2d 494, 497 [2000]; Matter of Frick v Bahou, 56 NY2d 777, 778 [1982]). The same principle applies to the County here.
The second reason has significance that extends beyond the present case. In Matter of AAA Carting & Rubbish Removal, Inc. v Town of Southeast (17 NY3d 136 [2011]), we held that a municipal contract, awarded pursuant to the competitive bidding statute, should be vacated if the municipality “accept [ed] a higher bid based on subjective assessment of criteria not specified in the bid request,” because such an action “gives rise to speculation that favoritism, improvidence, extravagance, fraud or corruption may have played a role in the decision” (AAA Carting & Rubbish Removal, Inc., 17 NY3d at 144). We conclude that the policy grounds articulated in AAA Carting with respect to the competitive bidding procedures of General Municipal Law § 103 apply to the procedures under section 104-b at issue here.
We now hold that an award of a contract under General Municipal Law § 104-b is arbitrary and capricious if the municipality evaluates a proposal using a standard that deviates from a standard expressly set forth in the RFR Such a deviation betrays a lack of “sound basis in reason” for the determination (Matter of Murphy v New York State Div. of *426 Hous. & Community Renewal, 21 NY3d 649, 652 [2013]; see generally Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]).
Our holding promotes the goals of fairness and the prevention of fraud and corruption in the bidding process. The offeror is given notice of the standards to be applied and acts accordingly. When different standards are applied, the process is subverted. Changing the expressly defined rules midway gives rise to speculation of fraud or corruption.
The County would have us distinguish General Municipal Law §§ 103 and 104-b in this regard. The statutes, however, are alike in a fundamental legislative purpose. The primary purposes of competitive bidding under General Municipal Law § 103 “are the (1) protection of the public fisc by obtaining the best work at the lowest possible price; and (2) prevention of favoritism, improvidence, fraud and corruption in the awarding of public contracts” (AAA Carting & Rubbish Removal, Inc., 17 NY3d at 142 [internal quotation marks omitted and emphasis added]). Similarly, under General Municipal Law § 104-b, services that are not required by law to be procured by competitive bidding must nevertheless “be procured in a manner so as ... to guard against favoritism, improvidence, extravagance, fraud and corruption” (General Municipal Law § 104-b [1]; see also Letter in Support from Francis J. Pordum, Assembly Sponsor, July 11, 1991, Bill Jacket, L 1991, ch 413 at 22). It is true that, pursuant to General Municipal Law § 103, the contract must be awarded to the lowest responsible bidder, whereas under General Municipal Law § 104-b a contract may be awarded to one other than the lowest responsible dollar of-feror if the municipality can justify the award (see General Municipal Law § 104-b [2] [e]). However, insofar as the prevention of favoritism, fraud and corruption is concerned, the purpose is identical. The policy reasoning underlying our decision in AAA Carting & Rubbish Removal, Inc.—“guarding] against such factors” (AAA Carting & Rubbish Removal, Inc., 17 NY3d at 144)—is equally applicable in the General Municipal Law § 104-b context under the circumstances here, where a municipality evaluates a proposal by a standard which is not consistent with that set forth in the RFP.
The County emphasizes that it was changing its standards to ensure that the lowest cost proposal was accepted. If the County believed that the RFP’s methodology did not adequately *427 reflect the importance of the cost consideration, its only option was to reject all the proposals and start over with an RFP that better reflected the weight to be given to cost (see AAA Carting & Rubbish Removal, Inc., 17 NY3d at 144). The County could not change its own rules mid-game, no matter the benefits. Indeed, to allow such conduct would be an invitation to impropriety. It would give any corrupt municipal employee a blueprint for avoiding judicial review of bid-rigging: first, advertise one set of standards in the request for bids; then, after the proposals have been received and the sealed portions opened, devise new standards to enable selection of your favored company, while making sure that your selection seems superficially reasonable from an economic point of view.
The dissent’s suggestion that it is improper to overturn the County’s award where there is no evidence of “improper motives” (dissenting op at 430) fails to recognize that awards may be overturned even without evidence of actual impropriety. The test is whether the award is “irrational, dishonest or otherwise unlawful” (AAA Carting & Rubbish Removal, Inc., 17 NY3d at 142, quoting Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth., 66 NY2d 144, 149 [1985]). We overturn actions in which agencies fail to comply with their own rules not only to combat actual unfairness, but also to uphold the public’s perception that these agencies act fairly in awarding contracts. Moreover, the dissent’s hypothesis that “[h]ad Orange County provided no example, it could have justified its choice of the actual formula as rational” (dissenting op at 431) lacks merit, because the meaning of a percentage to points ratio is commonly understood, with or without an example. The new formula used by the County in the dissent’s hypothetical scenario would still represent a material change from the RFP criterion.
In sum, the County acted arbitrarily as a matter of law by accepting proposals based on a method of evaluation that is inconsistent with the standard set out in its RFP. Its determination must be set aside. There is no necessity for us to consider ACME’s remaining arguments.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.

. We are troubled by the fact that the County, in seeking to demonstrate to the Court that VW had the highest score for the third zone, cites pages from the record that contain single score sheets for that zone, and not the average of the scores.

. As the transportation management company employee’s affidavit revealingly states, this was “a point to percentage ratio,” rather than the “percentage to points ratio” contemplated by the RFP.

. The County, in trying to explain why it deviated from its own specification, provided contradictory explanations that lack a rational basis. In an email, the transportation management company employee claimed that she had awarded points in the cost category by deducting a certain number of points for every $10,000 difference between the cost proposals. Such a method bears no resemblance to a percentage to points ratio. Shortly thereafter, the same employee submitted the affidavit in which she stated that the County deducted two points for every 4% difference in price. In an attempt to justify this change, the employee alluded to “a 7% difference in price between the lowest bidder VW and the next lowest bidder Quality” in the third zone, and *425 suggested that no points could have been deducted from Quality had the RFP’s formula been used. The reasoning is spurious. A 7% difference between VW and Quality in the third zone would have equated to a 1.4-point deduction to Quality, the second-lowest offeror, not a zero deduction, and this number could have been rounded down to a one-point deduction.
Additionally, the record reflects that the County awarded 18 points to Quality for cost in the third zone. Under the formula that the County purportedly used, a 7% difference would have equated to a four-point deduction or 16, rather than 18, points for Quality in the third zone, bringing into question whether the County used that formula after all.